**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOHN SCALIA, individually and as successor-in-interest of Decedent KIMBERLY MORRISSEY-SCALIA,**<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**COUNTY OF KERN, et al.,**<br><br>      **Defendants.** | **1:17-cv-01097-LJO-SKO**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**(ECF No. 18)** |

## I. <u>INTRODUCTION</u>

This case arises from the death of Kimberly Morrissey-Scalia ("Decedent" or "Morrissey-Scalia"), who died after twice falling from her bunk while a pretrial detainee at Kern County Jail. Decedent's husband, John Scalia ("Plaintiff"), brings claims individually and on behalf of his late wife's estate. Plaintiff brings this case against Kern County, Kern County Hospital Authority ("KCHA"), Kern County Sheriff Donny Youngblood, Kern County Sheriff's Sergeant Joel Swanson, Kern County Sheriff's Detention Deputies Randi Allen and Misty Miller, Kern County Hospital Authority Staff Nurse Rowena P. Blakely ("Blakely"), and Does 1-100, alleging deliberate indifference under 42 U.S.C. § 1983 and state law causes of action for Bane Act violations, failure to summon medical care pursuant to California Government Code § 845.6, negligence, and medical negligence.

Defendants KCHA and Blakely (collectively, for purposes of this motion, "Defendants") moved to dismiss ("Motion"). ECF No. 18. Plaintiff opposed ("Opp."), ECF No. 24, and Defendants filed a

reply ("Reply"), ECF No. 25.  This matter is suitable for disposition without oral argument.  *See* Local Rule 230(g).  For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART**.

## II. FACTUAL BACKGROUND

Decedent, a 59-year-old woman, was arrested following an incident at her residence with her roommate on June 22, 2016.  FAC ¶¶ 1, 17.  She had a history of mental illness, alcohol dependence, and "medical and mental health problems" involving prescription medications.  *Id*. ¶ 18.  Because of her history of suicide attempts, she was initially placed on suicide watch by the intake staff after her booking.  *Id*.  She was removed from suicide watch and on or about June 27, 2016, she was transferred from the Central Receiving Facility to the Lerdo Pre-Trial Facility, in Bakersfield, where she was housed in B-Pod.  *Id*. ¶¶ 20-22.  That same day, at approximately 11:15 p.m., Decedent fell approximately five feet from a lying position on a top bunk onto the bare concrete floor.  *Id*. ¶ 23.  She pressed her emergency intercom button to alert KCO Detention Deputies that she had been injured and was transported "to the 'infirmary' in a wheelchair, as she was unable to walk."  *Id*. ¶ 24.  Staff nurse Blakely saw Decedent at the infirmary, where Decedent reported falling from the top bunk and hitting the left side of her face, her left elbow, and her left knee, which was bleeding.  *Id*. ¶ 25.  She also had a bump over her left eyebrow as a result of the fall.  *Id*. ¶ 30.  Blakely did not order tests to assess potential head trauma or refer Decedent to a physician before clearing Decedent to return to B-Pod.  *Id*. ¶ 25.

Decedent was returned to B-Pod, in a different cell, where she again fell from her bunk at some point prior to 2:24 a.m. on June 28, 2016.  *Id*. ¶ 48.  She used her emergency intercom to alert jail staff that she was vomiting and required medical care.  *Id*.  She was unconscious and vomiting when Defendant Allen arrived in the cell.  At approximately 2:30 a.m., Blakely responded to Allen's request for medical staff.  Decedent was placed on a gurney and transported to the jail infirmary, where Blakely took her vital signs and at approximately 2:37 a.m. made a 911 request for transport to Kern Medical Emergency room.  *Id*. ¶¶ 52, 54.  The ambulance arrived at Lerdo at approximately 2:53 a.m., left Lerdo

at approximately 3:15 a.m., and arrived at Kern Medical Center at approximately 3:40 a.m. *Id.* ¶¶ 55-57. Decedent was taken into emergency surgery around 8:20 a.m. and was later placed on life support. *Id.* ¶¶ 57, 63. She passed away shortly after midnight on the morning of July 1, 2016. *Id.* ¶ 63.

## III. <u>LEGAL STANDARD</u>

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud [.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud inasmuch as it is meant to give defendants notice of the claims asserted against them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper. *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

# IV. <u>ANALYSIS</u>

**A.       <u>First Cause Of Action: 42 U.S.C. § 1983 Claim As To Blakely</u>**

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Furthermore, § 1983 requires that there be an actual connection or link between the actions of Defendants and the constitutional deprivations alleged to have been suffered by Plaintiff.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under § 1983, Plaintiff must satisfy the "linkage requirement"—meaning that he must link each named Defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.  Plaintiff must specify which Defendant(s) he feels are responsible for each violation of his constitutional rights and the factual basis, as his Complaint must put each Defendant on notice of Plaintiff's claims against him or her.  *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

A § 1983 action premised on violation of the Fourteenth Amendment for inadequate medical care requires allegations that each defendant acted with deliberate indifference to the decedent's serious medical needs.  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc).  Inmates bringing deliberate indifference claims against prison officials "may do so under the Eighth

Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Id*. at 1067-68; *see also Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."). Under either clause, a plaintiff must show that the prison officials acted with "deliberate indifference." *Id*. at 1068.

The test for demonstrating deliberate indifference is in two parts. First, a plaintiff "must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). Second, a plaintiff must show that "the defendant's response to the need was deliberately indifferent." *Id*. A showing of deliberate indifference requires demonstrating "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotation marks and citation omitted).

The deliberate indifference test has traditionally been the same whether brought as part of a claim by an inmate under the Eighth Amendment or by a pretrial detainee pursuant to the Fourteenth Amendment. *See, e.g.*, *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards."). Following the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and the Ninth Circuit's decision in *Castro*, 833 F.3d 1060, the applicable standard for a pretrial detainee's claim of deliberate indifference to a serious medical need is now less clear. In *Kingsley*, the Supreme Court held that a pretrial detainee bringing an excessive force claim under § 1983 must satisfy an objective standard with respect to whether an official's use of force was excessive, not a subjective standard that takes a defendant's state of mind into

account. 135 S. Ct. at 2472. The Court held that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," a determination made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Id*. at 2473. The Ninth Circuit held in *Castro* that even though *Kingsley* "did not squarely address whether the objective standard applies to all kinds of claims by pretrial detainees" under the Fourteenth Amendment, failure-to-protect claims, such as prison officials' failure to protect an inmate from violence at the hands of other inmates, brought by pretrial detainees also are subject to an objective standard, reasoning that *Kingsley*'s logic applied with equal force to failure-to-protect claims. 833 F.3d at 1069. First, § 1983 does not contain a scienter requirement, and the "underlying federal right, as well as the nature of the harm suffered, is the same for pretrial detainees' excessive force and failure-to-protect claims." *Id*. Moreover, both excessive force and failure-to-protect claims "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause." *Id*. at 1069-70. The two clauses are worded differently, often have differing claims, and "most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id*. at 1070 (quoting *Kingsley*, 135 S. Ct. at 2575). Finally, the Ninth Circuit took note of *Kingsley*'s broad wording and discussion of "'challenged governmental action' generally," rather than limiting the announced principles to cases involving "force." *Id*. at 1070 (quoting *Kingsley*, 135 S. Ct. at 2473-74 ("*Bell* [*v. Wolfish*, 441 U.S. 520, 522 (1979)]'s focus on 'punishment' does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated. Rather, as *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that the *challenged governmental action* is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." (emphasis supplied))). *Castro* overruled a prior holding "to the extent that it identified a single deliberate indifference standard for all § 1983 claims and to the extent that it required a plaintiff to prove an individual defendant's subjective intent to punish in the context of

a pretrial detainee's failure-to-protect claim." *Id.* The court held that while a pretrial detainee bringing a failure-to-protect claim need not show a defendant's subjective awareness of the level of risk, a plaintiff bringing such a claim must "prove more than negligence but less than subjective intent— something akin to reckless disregard." *Id.* at 1071 (citing Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) for the proposition that "reckless disregard may be shown by an objective standard under which an individual is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it" (internal quotation marks omitted)).

Left unclear in *Castro*'s wake, however, is whether a pretrial detainee bringing a claim for deliberate indifference to serious medical needs must prove that the defendant's action was subjectively or objectively unreasonable. District courts in California have split on the matter. *Compare Guerra v. Sweeny*, No. 1:13-CV-01077-AWI-BAM (PC), 2016 WL 5404407, at *3 (E.D. Cal. Sept. 27, 2016) ("After *Castro*, most district courts in this circuit have continued to apply the Eighth Amendment standard to pretrial detainees' claims of injury resulting from untreated serious medical needs.") (collecting cases), *appeal dismissed sub nom. Guerra v. Sweeney*, No. 16-16830, 2017 WL 4708008 (9th Cir. Feb. 27, 2017) *with Estate of Levingston v. County of Kern*, No. 1:16-CV-00188-DAD-JLT, 2018 WL 1335410, at *6 (E.D. Cal. Mar. 15, 2018) ("in the context of pretrial detainees protected by the Fourteenth Amendment, deliberate indifference is interpreted solely from an objective perspective, and has no subjective component"). The Ninth Circuit has on three recent occasions declined to revisit the issue. *See Sandoval v. County of San Diego*, No. 3:16-CV-01004-BEN-AGS, 2018 WL 733775, at *6 (S.D. Cal. Feb. 6, 2018) (holding that the subjective standard applicable in cases brought under the Eighth Amendment continues to apply to pretrial detainees bringing claims for deliberate indifference to serious medical needs pursuant to the Fourteenth Amendment because neither *Kingsley* nor *Castro* involved "application of an objective standard for determining a defendant's mental state in the context

7

of the claim at issue here").[1]

The Court finds that under *Castro*'s reasoning, a pretrial detainee's claim for medical deliberate indifference is subject to a solely objective standard.[2] *Castro* overruled the holding in *Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010), that § 1983 claims based on deliberate indifference are subject to the same standards whether brought pursuant to the Eighth or Fourteenth Amendments and instead held that a pretrial detainee bringing a deliberate indifference claim based on failure to protect need not prove a defendant's subjective intent to punish. 833 F.3d at 1070. *Clouthier* itself discussed a single test for pretrial detainees' deliberate indifference claims, whether premised on failure to protect or on failure to address serious medical needs:

> We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a "deliberate indifference" standard. *See, e.g., Lolli v. County of Orange*, 351 F.3d 410, 418–19 (9th Cir. 2003) (applying the "deliberate indifference" standard to a diabetic pretrial detainee's claims of failure to provide care for serious medical needs); *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 & n. 9 (9th Cir. 2002) (applying the "deliberate indifference" standard to the claims of a mentally ill pretrial detainee who died in custody); *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1461 & n. 2 (9th Cir. 1988) (applying the "deliberate indifference" standard to a § 1983 claim by the mother of a pretrial detainee who committed suicide in detention, and explaining that "the fourteenth amendment due process rights of pretrial detainees are analogized to those of prisoners under the eighth amendment"), *vacated on other grounds*, 490 U.S. 1087 (1989), *opinion reinstated*, 886 F.2d 235 (9th Cir.1989).

591 F.3d at 1241. In language quoted in *Castro*, the *Clouthier* court went on to state that the Ninth Circuit has "concluded that the 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees." *Id.* at 1242. That standard

---

[1] In each case, the Ninth Circuit affirmed dismissal or a grant of summary judgment in favor of the defendant for the plaintiff's claim for constitutionally inadequate medical care because the claims failed "under any potentially applicable standard." *See Edwards v. Mondora*, 700 Fed. App'x 661, 663 (9th Cir. 2017); *Darling v. Los Angeles Cty. Sheriff's Dep't*, 695 Fed. App'x 216, 217 (9th Cir. 2017); *Nyland v. Calaveras Cty. Sheriff's Jail*, 688 Fed. App'x 483, 485 (9th Cir. 2017).

[2] Neither the Ninth Circuit nor any other circuit court has applied *Kingsley* "specifically to a deliberate indifference to a detainee's serious medical needs claim." *Richmond v. Huq*, No. 16-2560, 2018 WL 1417546, at *4 n.3 (6th Cir. Mar. 22, 2018). In *Richmond*, the Sixth Circuit did not reach the issue but cited *Castro* and noted that in the wake of *Kingsley*, "this shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether" a plaintiff bringing a claim for deliberate indifference to serious medical needs must show the defendant's subjective intent element. *Id.*

incorporated a subjective test, requiring that a defendant actually be aware of the significant risk. *Id*. It was this holding that the *Castro* court held was in "serious doubt" in the wake of *Kingsley*. 833 F.3d at 1068.

Many of the reasons the *Castro* court gave for holding that deliberate indifference claims based on failure to protect are sufficiently akin to excessive-force claims to apply an objective standard – that § 1983 contains no scienter requirement; that excessive-force and failure-to-protect claims are both rooted in the Fourteenth Amendment, rather than the Eighth Amendment; and that *Kingsley* discusses in broad terms "challenged governmental action" without restricting its language to claims arising from alleged use of excessive force – apply equally to deliberate indifference claims based on failure to address serious medical needs as they do to deliberate indifference claims based on failure to protect.

Indeed, the *Castro en banc* court declined an opportunity to make clear that the holding was limited to deliberate indifference claims based on a failure to protect. Judge Ikuta objected in dissent that the test that the majority announced was "underinclusive" because of its requirement that a defendant must act, pointing to *Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003), and suggesting that the test announced in *Castro* would not have captured the officers' conduct there. *Id*. at 1086 (Ikuta, J., dissenting). The majority did not respond that the test would be inapplicable in *Lolli*, a case involving deliberate indifference to the serious medical needs of a pretrial detainee, but instead responded that the result in the case would be the same under the test announced in *Castro*. *Id*. at 1071 n.4 (citing *Lolli*, 351 F.3d at 419-21 (discussing deliberate indifference to serious medical needs)). If the Ninth Circuit intended to limit the new test to deliberate indifference cases arising only in the failure-to-protect context, neither *Castro*'s reasoning nor its discussion of application of the new test makes that apparent.

In short, the Court does not read *Castro* to strip pretrial detainees' deliberate indifference cases of a subjective requirement *only* if they arise in the context of a claim for failure to protect. *Clouthier*, the case *Castro* overruled, did not so limit the test, and the reasoning the *Castro* court employed largely

applies beyond failure-to-protect cases. The Court finds that an objective test for deliberate indifference applies to Plaintiff's claim.

### 1. Application Of The "Deliberate Indifference" Test

*Castro*'s test for deliberate indifference claims based on failure to protect is as follows:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

833 F.3d at 1071.

Marrying this test and the traditional test for deliberate indifference for untreated medical conditions requires a plaintiff to demonstrate as follows. A plaintiff must show (1) a serious medical need, (2) a purposeful act or failure to respond to a prisoner's pain or possible medical need, even though a reasonable defendant in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (3) harm caused by the indifference. The second prong requires an intent level "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* The defendant's conduct "must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* at 1071 (quoting *Kingsley*, 135 S. Ct. at 2473) (internal alterations and quotation marks omitted). As before, "[a]n *inadvertent* failure to provide adequate medical care does not, by itself, state a deliberate indifference claim for § 1983 purposes." *Wilhelm*, 680 F.3d at 1122 (emphasis in original) (quotation marks omitted).

Plaintiff easily meets the first prong. The FAC alleges that Decedent fell from her bunk from a height of approximately five feet onto bare concrete, and when she was brought to Blakely, she reported "hitting the left side of her face, her left elbow, and her left knee," which was bleeding. FAC ¶¶ 23, 25.

She also had a "bump over her left eyebrow from the fall." *Id.* ¶ 30. Decedent had been transported from her cell to the jail infirmary by wheelchair because she was unable to walk, and Blakely "observed that the Decedent could not ambulate on her own." *Id.* ¶¶ 24-25. "Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment," *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014), and a fall onto bare concrete resulting in bumps, abrasions, and an inability to walk meets this standard.

The FAC alleges that Blakely "knew or should have known that when Decedent fell from her bunk and struck her head on the concrete floor, Decedent faced a serious medical need" because of the risk of a traumatic brain injury." FAC ¶ 32. It further alleges that Blakely spent fewer than 10 minutes with Decedent and sent her back to B-Pod "without any follow-up plan to monitor her, without seeking the opinion of a physician and without conducting any tests." Opp. at 14 (citing FAC ¶¶ 25, 32). Construing the FAC in the light most favorable to the Plaintiff, Plaintiff's allegations that it was objectively reckless not to assess a detainee for possible head trauma after that person fell onto bare concrete from a height of five feet, struck her head, and was unable to walk following the fall is adequate to meet the second prong. The FAC also alleges that after the fall, "Decedent faced a serious medical need for evaluation and treatment regarding possible traumatic brain injury and that in the case of traumatic brain injury immediate medical treatment is required to avoid bleeding in the brain, brain swelling, subdural hematoma, and other progressively serious results including death." FAC ¶ 32. It alleges that the decision not to evaluate Decedent for brain trauma and to send her back to jail after the first fall left the injury untreated and led to delay in treatment, leading to further brain injury and Decedent's death. FAC ¶¶ 36, 59. *See also id.* ¶ 61 ("BLAKELY's decisions exposed Ms. Morrissey-Scalia to a substantial risk of death from traumatic brain injury and subdural hematoma, BLAKELY did not take reasonable available measures to abate the risk she subjected Ms. Morrissey-Scalia to even though a reasonable person in her position and in the circumstances would have appreciated the high

11

degree of risk involved, and, by not taking those measures, BLAKELY caused the death of Ms. Morrissey-Scalia."). This is adequate to meet the third prong.

Defendants argue in reply that Plaintiff's position is inconsistent, because it cannot be that Blakely was both deliberately indifferent (which they argue requires a subjective awareness of the potential harm from her action) and that KCHA failed to train her (which implies that it failed to impart adequate knowledge that would have given Blakely the subjective knowledge of the high risk of injury resulting from her action). As discussed above, a showing of deliberate indifference includes only an objective standard, and it is not inconsistent for Plaintiff to argue that Blakely knew or should have known of the risk that her actions had and that KCHA failed adequately to train her to deal with the head trauma that decedent presented with.

Accordingly, Defendants' motion to dismiss Plaintiff's first cause of action is **DENIED**.

**B.      Second Cause Of Action: _Monell_ Liability As To Kern County Hospital Authority**

Plaintiff brings claims against KCHA under _Monell v. Department of Social Services of the City of New York_, 436 U.S. 658 (1978), which provides that municipalities may be liable for unconstitutional acts under § 1983. _Monell_ is clear, however, that "a municipality cannot be held liable under § 1983 _solely_ because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a _respondeat superior_ theory." 436 U.S. at 691. Instead, a municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. _Id._ at 694. A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." _Fogel v. Collins_, 531 F.3d 824, 834 (9th Cir. 2008). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" _Lee v. City of Los Angeles_, 250 F.3d 668, 681 (9th Cir. 2001) (quoting _Oviatt v. Pearce_, 954 F.2d 1470, 1474 (9th Cir. 1992)). More generally, a plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right; (2) the

1    defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the

2    plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the

3    constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

4         Municipal liability under *Monell* may be premised on: (1) conduct pursuant to a formal or

5    expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard

6    operating procedure" of the local government entity; (3) a decision of a decision-making official who

7    was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to

8    represent official policy in the area of decision; or (4) an official with final policymaking authority either

9    delegating that authority to, or ratifying the decision of, a subordinate. *See Thomas v. Cty of Riverside*,

10   763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). "A policy can be

11   one of action or inaction," *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006), and can

12   be formal or informal. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988). "A county's

13   failure adequately to train its employees to implement a facially valid policy can amount to deliberate

14   indifference." *Long v. County of Los Angeles*, 442 F.3d 1178, 1188 (9th Cir. 2006) (citing *Berry v.

15   Baca*, 379 F.3d 764, 768 (9th Cir. 2004), and *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082,

16   1088 (9th Cir. 2000)).

17        While inadequacy of training may constitute a "policy" giving rise to *Monell* liability,

18   "adequately trained [employees] occasionally make mistakes; the fact that they do says little about the

19   training program or the legal basis for holding the [municipality] liable." *City of Canton v. Harris*, 489

20   U.S. 378, 379 (1989). Therefore, a claim of inadequate training is only cognizable under § 1983 "where

21   [the County]'s failure to train reflects deliberate indifference to the constitutional rights of its

22   inhabitants." *Id.* at 392. In order to show that a failure to train amounts to deliberate indifference, it is

23   "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained

24   employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). In certain cases, however, a showing of

25   "obviousness . . . can substitute for the pattern of violations ordinarily necessary to establish municipal

liability." *Connick*, 563 U.S. at 63.

Defendants argue that the FAC contains nothing more than bare, boilerplate allegations that "fail to identify a specific pattern, practice, or custom implemented by a policymaker specifically attributable to <u>KHCA</u>," separate and apart from the County, that constituted "deliberate indifference" to decedent's rights. Mot. at 13. Plaintiff responds that the FAC alleges a number of unconstitutional actions and omissions by Blakely "and specific customs, policies, or practices on the part of KCHA that were so closely related as to be the moving force of Blakely's unconstitutional actions and omissions." Opp. at 16. The FAC makes a number of allegations that KCHA failed properly to train nurses at the Lerdo jail infirmary. It alleges that "KCHA's inadequate training placed a nurse without sufficient training for handling potential traumatic brain injuries into a triage-type position," which were "usual and recurring situations faced by a nurse at the Lerdo infirmary." FAC ¶¶ 39-40. The FAC additionally alleges that both KCO and KCSO had training programs that were deficient in training officials and employees how to look for head and brain trauma, treat pretrial detainees for severe head and brain trauma, and monitor pretrial detainees for symptoms of severe head trauma, among other shortcomings. *Id*. ¶ 92. It also alleges that KCO and KCSO failed to provide sufficient medical resources at the jail, including competent medical professionals who had been properly trained, *id*. ¶ 111(a), failed properly to classify, house, and monitor inmates suffering from mental health issues or disabilities, *id*. ¶ 111(b), and that the staff had not been properly trained to identify when an inmate requires immediate attention at urgent care trauma centers or to follow proper protocols when an inmate has reportedly endured serious head trauma, *id*. ¶ 111(c). It alternatively alleges that if KCO and KCHA had policies or training in place addressing the above topics, it failed properly to oversee or carry them out. *Id*. ¶ 112.

The FAC includes allegations specific to KCHA and allegations concerning policy failures by both KCHA and KCO that are more than unspecific recitations of the cause of action. The FAC adequately alleges that KCHA "disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional

rights." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting *Connick*, 563 U.S. at 61).

Accordingly, Defendants' motion to dismiss Plaintiff's *Monell* claims is **DENIED**.

**C.     Third Cause Of Action: Violation Of California Civil Code § 52.1**

Plaintiff's third cause of action arises under California Civil Code section 52.1 ("the Bane Act"). The Bane Act authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion.  *See* Cal. Civ. Code § 52.1(a) (proscribing interference "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . ."); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998) (interpreting Bane Act's use of "interferes" to mean "violates").  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007); *see also Doe v. State*, 8 Cal. App. 5th 832, 842, (2017), *review denied* (June 14, 2017) ("To prevail on a cause of action under Civil Code section 52.1, the plaintiff must show that the defendant interfered with or attempted to interfere with the plaintiff's legal right by threatening or committing violent acts.").  A plaintiff bringing a claim pursuant to the Bane Act "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015).

Defendants argue that the deliberate indifference claim Plaintiff brings against Blakely fails to allege any threat, intimidation, or coercion and therefore fails to state a claim for violation of the Bane

Act. Mot. at 14-15. Plaintiff responds that the FAC's Bane Act claim should survive because it alleges that Blakely knowingly deprived decedent of a constitutional right though an act – deliberate indifference – that is inherently coercive. Opp. at 20-21.

"The Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or coercion has been the source of much debate and confusion." *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801 (2017), *as modified* (Nov. 17, 2017), *review denied* (Feb. 28, 2018) (alterations and quotation marks omitted); s*ee also K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) ("Courts deciding whether the 'threat, intimidation or coercion' must be distinct from the alleged underlying constitutional or statutory violation have come out all over the map.").

Defendants' position finds support in recent Court of Appeal decisions. In *Shoyoye v. County of Los Angeles*, the plaintiff brought a Bane Act claim for unlawful detention based on a clerical error that led to his being held in detention for two weeks beyond the date of release, which he claimed violated his constitutional right to be free of unreasonable seizure. 203 Cal. App. 4th 947 (2012). The appellate panel held that "where coercion is inherent in the constitutional violation alleged, i.e., an overdetention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met" and that a Bane Act violation "requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." *Id.* at 959. Courts in the wake of this decision split on whether "something more than an inherently coercive violation is required to state a claim under the Bane Act." *Davis v. City of San Jose*, 69 F. Supp. 3d 1001, 1007 (N.D. Cal. 2014) (collecting cases). *Shoyoye* drew a distinction between intentional and merely negligent conduct, stating that "[t]he statutory framework of section 52.1 indicates that the Legislature meant the statute to address interference with constitutional rights involving more egregious conduct than mere negligence. . . . The apparent purpose of the statute is not to provide relief for an overdetention brought about by human error rather than intentional conduct." *Shoyoye*, 203 Cal. App. 4th at 958-59. Courts interpreting *Shoyoye* narrowly focused on the

intentional-conduct discussion to limit the scope of the requirement that a plaintiff bringing a Bane Act claim plead coercion separately from the underlying constitutional violation. *See M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) ("the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and . . . *Shoyoye* applies only when the conduct is unintentional"). Subsequent appellate decisions did little to clarify the issue. In *Bender v. County of Los Angeles*, the Court of Appeal held that where "an arrest is unlawful *and* excessive force is applied in making the arrest, there has been coercion 'independent from the coercion inherent in the wrongful detention itself.'" 217 Cal. App. 4th 968, 979 (2013) (quoting *Shoyoye*, 203 Cal. App. 4th at 959).

In *Allen v. City of Sacramento*, the Court of Appeal appeared to restate the rule enunciated in *Shoyoye* when it affirmed dismissal of a Bane Act claim that failed to allege coercion beyond the coercion inherent in a wrongful detention: "Consistent with *Shoyoye*, we conclude a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1." 234 Cal. App. 4th at 69; *see also id.* (holding that "an allegedly unlawful arrest but no alleged coercion beyond the coercion inherent in any arrest" failed to state a claim under the Bane Act). The Ninth Circuit Court of Appeals cited *Shoyoye*, *Bender*, and *Allen* when it affirmed a jury verdict in favor of the defendants in a search-and-seizure case, holding that there was no error in a jury instruction that required plaintiffs "to show threats, intimidation, or coercion independent from the acts inherent in their detention and search" to prevail on their Bane Act claim. *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015) ("Numerous California decisions make clear that a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act.").

It was against this legal backdrop that the Court of Appeal in *Cornell v. City and County of San Francisco* sought to clarify the requirements of a Bane Act claim. 17 Cal. App. 5th at 801. As the Court of Appeal there noted, federal district courts in California examining the line of cases stretching from *Shoyoye* continued to reach different conclusions with respect to whether Bane Act claims require that the coercion alleged be separate from the constitutional violation, including in the context of deliberate

indifference claims.  *Compare Page v. County of Madera*, No. 1:17-CV-00849-DAD-EPG, 2017 WL 5998227, at *4 (E.D. Cal. Dec. 4, 2017) ("Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials knowingly deprived them of a constitutional right or protection through acts that are inherently coercive and threatening, such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations.") (internal quotation marks and alterations omitted) *with Razon v. County of Santa Clara*, No. 17-CV-00869-LHK, 2018 WL 405010, at *7 (N.D. Cal. Jan. 12, 2018) ("a plaintiff alleging deliberate indifference to serious medical needs must also allege coercion separate from the coercion inherent in that deliberate indifference in order to state a Bane Act claim") (internal quotation marks omitted).

The *Cornell* court explicitly sought to clear up the confusion among district courts over whether Bane Act claims require a separate allegation of coercion apart from the underlying violation.  17 Cal. App. 4th at 801.  At issue in the case was a Bane Act claim arising from police officers' wrongful arrest, which defendants claimed on appeal was insufficient for lack of having included a separately coercive act apart from the arrest itself, citing *Shoyoye*.  *Id*. at 795.  Though the Bane Act claim in *Cornell* arose in the context of an unlawful arrest, the case's careful reasoning extends beyond the narrow circumstances under which it arose.

The opinion contains a lengthy analysis of the facts and reasoning from *Shoyoye* and ultimately disagrees with the principle, originating in California case law in that case,[3] that where coercion is "inherent in the constitutional violation alleged," a plaintiff must allege "coercion independent from the coercion inherent in" the constitutional violation in order to state a claim under the Bane Act.  *Id*. at 795. The court examined *Shoyoye* closely and explained that "*Shoyoye*'s discussion of coercion 'independent

---

[3] The opinion also discusses *Bender*, *Allen*, and *Lyall*, though in considerably less detail.  It explains *Allen* as "the sole published California appellate opinion to consider *Shoyoye* in any depth," which "ultimately holds only that 'conclusory allegations of "forcible" and "coercive" interference with plaintiffs' constitutional rights are inadequate to state a cause of action for a violation of section 52.1.'"  *Id*. at 799 n.28.  The opinion states that "in the end *Bender* is just as opaque as *Shoyoye*."  *Id*. at 799.

from the coercion inherent in the wrongful detention itself' was aimed at separating tort liability from statutory liability in the specific context of a jail overdetention following a lawful arrest." *Id.* at 799; *see also id.* at 798 ("When the [*Shoyoye*] court announces that Section 52.1 requires 'coercion independent from the coercion inherent in the wrongful detention itself[,]' its focus is on whether the requisite level of scienter for Section 52.1 liability had been met in a setting where the plaintiff proved negligence, at most.") (internal citation omitted).

The court "acknowledge[d] that some courts have read *Shoyoye* as having announced 'independen[ce] from inherent coercion' as a requisite element of all Section 52.1 claims alleging search-and-seizure violations," but concluded that "those courts misread the statute." *Id.* at 799. Examining the text of the Bane Act, the court explained that the "plain terms" of Section 52.1 proscribe "interference with" or "attempted interference with" protected rights carried out "by threat, intimidation or coercion." The statute targets interference with rights, making no distinction whether the coercion is inherent in the underlying act or not – "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Id.* at 800; *see also Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 844 (2004) (because the text of the Bane Act is "unambiguous, this court must dutifully construe it according to the plain import of its express terms") (Baxter, J., concurring). The *Cornell* court went on to reason that because the Bane Act was crafted to cover actions by law enforcement officials through its inclusion of the phrase "whether or not acting under color of law," and because much of what law enforcement officials do is "inherently coercive," reading the statute to exempt law enforcement activity would create a broad category of judicially created immunity that has no support in the text of the law. *Id.* The court held that

> [p]roperly read, the statutory phrase "threat, intimidation or coercion" serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief. We see no reason that, in addition, the required "threat, intimidation or coercion," whatever form it may take, must also be transactionally "independent" from a properly pleaded—and proved— unlawful arrest.

*Id.* The court concluded that where "an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." *Id.* at 801-02. This standard, borrowed from federal civil rights law under 18 U.S.C. § 241,[4] "accomplishes in substance the same thing as the independent from inherent coercion test since it ensures ordinary negligence is not cognizable under Section 52.1." *Id.* at 802. *Cornell* explained that the test

> " 'essentially sets forth two requirements for a finding of "specific intent" . . . . The first is a purely legal determination. Is the . . . right at issue clearly delineated and plainly applicable under the circumstances of the case? If the trial judge concludes that it is, then the jury must make the second, factual, determination. Did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that . . . right? If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—i.e., "in reckless disregard of constitutional [or statutory] prohibitions or guarantees." ' "

*Id.* at 803. In their Reply, Defendants argue that the Court should not apply the reasoning of *Cornell* here. First, they argue that the Court should not rely on *Cornell* until the deadline for the California Supreme Court to review it has elapsed. The California Supreme Court denied review on February 28, 2018. Second, Defendants urge the Court to adopt the reasoning of a decision in the Northern District of California from mid-January, a decision that pre-dated the period of review of *Cornell* and which does not discuss *Cornell*. *Razon v. County of Santa Clara*, No. 17-CV-00869-LHK, 2018 WL 405010 (N.D. Cal. Jan. 12, 2018). A more recent opinion by the author of *Razon* discusses *Cornell* and acknowledges that "another court in this district recently faced this exact conundrum and concluded 'that the recent *Cornell* decision is more persuasive than *Shoyoye* and its progeny as to the coercion element of the Bane Act and better predicts how the California Supreme Court would interpret the statute.'" *Inman v.*

---

[4] This section, titled "Conspiracy against rights" provides in relevant part as follows: "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same," they are subject to punishment under the section.

*Anderson*, No. 17-CV-04470-LHK, 2018 WL 1071158, at *17 (N.D. Cal. Feb. 27, 2018) (citing *Watkins v. City of Oakland*, 2018 WL 574906, at *13 (N.D. Cal. Jan. 26, 2018). The court in *Inman* went on to hold that the plaintiff there failed to meet the standard in either *Shoyoye* or *Cornell*. *Id.*

Finally, though *Cornell* arose in the context of a wrongful arrest, its principles are not limited to those circumstances. The court's analysis of the reasoning underlying *Shoyoye* and examination of the text of the Bane Act apply to all Bane Act claims. Indeed, the *Cornell* court cited with approval *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013), a deliberate indifference case, as an example of "cases [that] stand in stark contrast to others that apply the independent from inherent coercion test—in our view incorrectly—outside the confines of jail overdetention, taking that test to the limit of its logic." *Cornell*, 17 Cal. App. 5th at 802 n.31. The court in *M.H.* held that intentionality was the key to a Bane Act claim and that because deliberate indifference "has been associated with affirmatively culpable conduct, . . . a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights . . . adequately states a claim for relief under the Bane Act." *M.H.*, 90 F. Supp. 3d at 898-99.

The Court finds the reasoning in *Cornell* persuasive.[5] As *Cornell* discusses, nothing in the text of the Bane Act requires that the coercion element be separate from the underlying constitutional or statutory violation. Moreover, a prison official's deliberate indifference to serious medical needs is a coercive act that rises above mere negligence of the sort that concerned the *Shoyoye* court. Applying the intent test laid out in *Cornell*, the Court finds that Plaintiff has stated a claim for relief under the Bane Act. First, the right at issue, the right to be free from deliberate indifference to one's serious medical needs, is "clearly delineated and plainly applicable" to the circumstances. *Cornell*, 17 Cal. App. 5th at 803. Second, Plaintiff has adequately pleaded that Blakely acted with "the particular purpose of

---

[5] "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986). The Court finds that *Cornell*'s careful analysis and attempt to draw a logical thread through the messy case law best predicts how the California Supreme Court would rule on the issue.

depriving the [plaintiff] victim of his enjoyment of the interests protected by" the Fourteenth Amendment, and under this standard, pleading "[r]eckless disregard of the 'right at issue' is all that [i]s necessary." *Id.* The Court has found that Plaintiff adequately pleaded a claim for deliberate indifference, which requires alleging reckless disregard; Plaintiff has therefore adequately alleged that Blakely acted with the requisite specific intent under the Bane Act.

The FAC brings the Bane Act claim both as a survival claim and on Plaintiff's behalf. *See* FAC ¶ 119(c) (claim for Plaintiff's First and Fourteenth Amendment rights to be "free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other"); *id.* ¶ 121 (Bane Act claim asserted as wrongful death claim to the extent it was done to Plaintiff). Plaintiff concedes that Bane Act claims are not cognizable as wrongful-death actions and may only be brought as survival claims. Opp. at 18 n.1. Plaintiff requests that dismissal of his individual claim be without prejudice in case there is an intervening change in the law. The Court declines this invitation. If there is a change in the law, Plaintiff may at that time file a motion under Federal Rule of Civil Procedure 15(a).

Accordingly, Defendants' motion to dismiss the Bane Act is **DENIED** with respect to the survival claim and **GRANTED WITHOUT LEAVE TO AMEND** with respect to Plaintiff's individual claim.

**D.** **Fourth Cause Of Action: Violation of California Government Code § 845.6**

California Government Code § 845.6 provides in pertinent part:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, . . .a public employee . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

"Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." *Jett*, 439 F.3d at 1099 (quoting *Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993)). California courts have construed the provision to create limited liability only "when: (1) the public

22

employee knows or has reason to know [of the] need, (2) of immediate medical care, and (3) fails to take reasonable action to summon such medical care." *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013) (internal quotation marks omitted). This section is "very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care." *Id. See also Nelson v. State of California*, 139 Cal. App. 3d 72, 80-81 (1982) (distinguishing violation of California Government Code § 845.6 from tort of medical malpractice).

In *Watson v. State of California*, the plaintiff, an inmate at various state prisons, brought suit under § 845.6 for failure of prison officials "to summon and provide reasonable medical care." 21 Cal. App. 4th 836, 840 (1993). The plaintiff had injured his Achilles tendon while playing basketball and saw a nurse the following day. The next month, he was transferred to a different state prison where he underwent a physical intake exam by a physician and medical assistant who were told of his injury but did not examine the tendon because he was able to walk. *Id.* at 839. Four days later, he saw another physician at the prison medical clinic who took x-rays of the ankle and prescribed medication for a sprained ankle. *Id.* The next month, he was transferred to another state prison and again examined by a physician, who noted on the medical chart that the plaintiff had a probable Achilles injury that was mending. *Id.* The California Court of Appeal affirmed the grant of summary judgment to the defendants, holding that "it was uncontroverted that State provided prompt medical care." *Id.* at 843. The court held that the State had no actual or constructive notice of the Achilles condition because "[n]one of the doctors who examined appellant recognized the extent of the injury," and that if a "prisoner is dissatisfied with the treatment provided, section 845.6 requires that he file a negligence action against the medical provider." *Id.* at 842-43.

The California Court of Appeal in *Nelson v. State of California* affirmed a dismissal of a state prisoner's claim brought under § 845.6 based on the failure of defendant physicians to have diagnosed what was later revealed to be diabetes. 139 Cal. App. 3d 72, 75 (1982). The court rejected the argument

that failure to prescribe the correct medication is "the legal equivalent to a failure to summon medical care" under § 845.6, holding that any such failure is medical malpractice, not a violation of § 845.6. *Id.* at 80-81. "Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist is . . . medical malpractice and clearly, as a matter of the plain meaning of the statutory language, cannot be characterized as a failure to summon medical care." *Id.* at 81.

Particularly instructive is the California Court of Appeal's opinion in *Castaneda*, 212 Cal. App. 4th 1051, where that court reversed a jury verdict in favor of the plaintiff and held as a matter of law that California was immune from liability under § 845.6 for the prisoner's failure to undergo a biopsy while in state custody. The prisoner had separately seen a physician, who referred him for a biopsy but did not see him again before he was transferred, and a nurse at the second state facility, who also wrote a referral for a biopsy but did not follow up on the referral before the prisoner was released to federal authorities seven weeks later. *Id.* at 1058-59. After the prisoner was released from federal custody, the lesion was diagnosed as cancer, and he subsequently died. The court held that the state did summon medical care, by referring Castaneda to the physician and nurse. The court held that "[u]der *Nelson* and *Watson*, the failure of these two public employees to provide further treatment, or to ensure further diagnosis or treatment, or to monitor Castaneda or follow up on his progress, are all facts which go to the reasonableness of the medical care provided, but do not constitute a failure to *summon* medical care." *Id.* at 1072 (emphasis in original). The court rejected the estate's claim that a doctor's rejection of the referral for an immediate biopsy at the first facility and the failure to see the nurse at the second facility for three weeks after arrival amounted to a failure to summon medical care because those decisions were "a matter of professional judgment exercised during the provision of medical care." *Id.* at 1073; *see also id.* ("The decision not to circle 'Urgent' or 'Emergent' was a matter within Dr. Leong's medical judgment, but certainly not a failure to summon. . . . [A]ll omissions cited by the estate fall under the rubric of obtaining or providing medical care, for which actions the State is immune.")

In opposition, Plaintiff cites *Jett v. Penner*, a 2006 case in which the Ninth Circuit held that § 845.6 "includes both diagnosis and treatment." 739 F.3d 1091, 1099 (9th Cir. 2006). Plaintiff concedes that "Eastern District courts have not been inclined to follow *Jett*," Opp. at 22 n.2, and with good reason. In *Jett*, a prisoner fell from the top bunk to the floor of his cell, injuring his thumb in the process. 739 F.3d at 1094. He was sent to the emergency room, where he was diagnosed with a broken thumb and advised to see an orthopedist the following week. *Id*. Three days later, he saw another physician at the prison, but his hand was still too swollen to be placed in a cast. Over the next six weeks, he repeatedly requested care but did not see a doctor until nearly two months after the injury and did not see a hand specialist until over a year and a half after the injury. *Id*. In reversing a grant of summary judgment in favor of the defendants, the Ninth Circuit held that "the term 'immediate medical care' as used in the statute includes both diagnosis and treatment and therefore conclude[d] the need for 'immediate medical care' can arise more than once in relation to an ongoing serious medical condition." *Id*. at 1099.

Seven years after the Ninth Circuit's decision in *Jett*, the California Court of Appeal decided *Castaneda* and squarely rejected *Jett*'s interpretation of § 845.6. The *Castaneda* court explained that *Jett* stretched § 845.6 beyond what the legislature contemplated:

> [T]he the Ninth Circuit's application of section 845.6 ignores California authority interpreting that statute. California courts hold the failure to prescribe necessary medication or, once summoned to provide treatment, to ensure proper diagnosis, or to monitor the progress of an inmate that the public employee has been summoned to assist, are issues relating to the manner in which medical care is *provided*, and do not subject the State to liability under section 845.6 for failure to *summon*. . . . Once summoned, the quality of medical care is a matter of medical policy and practice, imposing on medical practitioners a duty to exercise that degree of diligence, care, and skill possessed by other members of the profession, but it is not a violation of the employee's obligation to summon medical care under section 845.6.

212 Cal. App. 4th at 1074. The Ninth Circuit has held that its interpretations of California state law are "only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect." *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002) (overruling prior holding

inconsistent with two intervening cases from the California Court of Appeal) (internal citation omitted); *see also Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) (though decisions of the Court of Appeal are persuasive but not binding, "[w]e should nevertheless follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it."); *Briceno v. Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009) ("In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently."); *Hernandez v. Towne Park, Ltd*., No. CV 12-02972 MMM JCGX, 2012 WL 2373372, at *13 n.62 (C.D. Cal. June 22, 2012) ("The Ninth Circuit has strongly stated that when applying California law, federal district courts should follow precedential decisions by the California Court of Appeal.") (citing *Watts*).  The Court accordingly declines to follow *Jett*'s interpretation of § 845.6.

*Castaneda* controls.  The FAC alleges that Defendant Allen, with the knowledge of Defendant Miller, took the decedent to Blakely at the Lerdo jail infirmary after the first fall from the top bunk. FAC ¶¶ 23-24.  It then alleges that Blakely "cleared" decedent to return to B-Pod, rather than transferring her to an emergency trauma center or seeking the opinion of a physician or conducting a proper battery of tests.  *Id*. ¶ 25.  Whether Blakely, a medical professional, knew or should have known in the exercise of her medical judgment that decedent required further immediate evaluation or should have established a plan for following up on decedent once she was in her cell or asked the jail staff to take precautions once decedent was in the cell, *id*., ¶¶ 32-38, and whether Blakely should have summoned an ambulance sooner than seven minutes after responding to Decedent's call after falling from her bunk the second time, *id.* ¶¶ 50-54, are issues going to the quality of care Decedent received, and do not allege a violation of § 845.6.  *Castaneda*, 212 Cal. App. 4th at 1072 (under California law, "the failure of these two public employees to provide further treatment, or to ensure further diagnosis or treatment, or to monitor [plaintiff] or follow up on his progress, are all facts which go to the

reasonableness of the medical care provided, but do not constitute a failure to *summon* medical care")

(emphasis in original); *Nelson*, 139 Cal. App. 3d at 81 ("Failure of a practitioner to prescribe or provide

necessary medication or treatment to one he or she has been summoned to assist . . . cannot be

characterized as a failure to summon medical care."); *Watson*, 21 Cal. App. 4th at 843 ("Where, as here,

the prisoner is dissatisfied with the treatment provided, section 845.6 requires that he file a negligence

action against the medical provider."). Care was summoned; whether Blakely should have exercised her

medical judgment differently does not allege a violation of § 845.6.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for violation of § 845.6 is

**GRANTED WITH LEAVE TO AMEND**.

**E.      Fifth Cause Of Action: Negligence and Premises Liability**

The fifth cause of action is brought for negligence and premises liability against all defendants

named in the FAC. The Court reads this allegation as two related but somewhat independent claims:

one for general negligence and another for premises liability.

As to premises liability, Defendants argue that the FAC has no allegations that KCHA and

Blakely owned, operated, or maintained the jail premises. Mot. at 19. Plaintiff does not dispute that to

the extent that Defendants do not own or maintain the jail premises, they do not have a claim against

Defendants based on premises liability. Nevertheless, they argue that to the extent that any of Blakely's

"acts and omissions" are not covered by the sixth cause of action, for medical negligence, they intend to

assert a claim against her for ordinary negligence. Opp. at 23-24.

Because they have conceded that they do not intend to pursue a premises liability action against

the Defendants, Defendants' motion to dismiss Plaintiff's claim for premises liability is **GRANTED**

**WITHOUT LEAVE TO AMEND**.

As to general negligence, Defendants cite *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 8 Cal.

4th 992 (1994). *Flowers* stands for the proposition that California law permits only a single action for

negligence, whether professional or ordinary, when the claims are based on the same set of facts. *Id.* at

998 ("As to any given defendant, only one standard of care obtains under a particular set of facts, even if the plaintiff attempts to articulate multiple or alternate theories of liability."). In *Flowers*, the California Supreme Court reversed a Court of Appeal decision that itself reversed a grant of summary judgment to the defendant hospital. At issue was a nurse's failure to raise the rail on a gurney, which the Court of Appeal found, based on expert testimony, to be insufficient to state a cause of action for medical negligence but adequate to state a cause of for ordinary negligence. The California Supreme Court reversed, holding that the Court of Appeal's analysis "necessarily implies that the same factual predicate can give rise to two independent obligations to exercise due care according to two different standards. But this is a legal impossibility: a defendant has only *one* duty, measured by *one* standard of care, under any given circumstances." *Id*. at 1000. The case is not on point here. First, at the pleading stage a plaintiff is permitted to plead in the alternative. Second, there are potentially multiple different actions for which Plaintiff may assert negligence, rather than a single incident, as in *Flowers*, for which a plaintiff is asserting both ordinary and medical negligence. In other words, Plaintiff has asserted that if there are factual circumstances to which medical negligence claims would not apply, he intends to assert ordinary negligence claims as to those facts. This is unlike *Flowers*, where the California Supreme Court disclaimed the idea that both ordinary and medical negligence could apply to a single factual incident. Here, however, nothing presently stated in the complaint suggests Blakely engaged in any conduct that falls outside the medical realm, so any such conduct appears to belong only within a medical negligence claim.

Accordingly, Defendants' motion to dismiss the claim for ordinary negligence is **GRANTED WITH LEAVE TO AMEND**.

**F.    Prayer For Punitive Damages**

Defendants seek dismissal under Rule 12(b)(6) of Plaintiff's prayer for relief for punitive damages. It is "well-established that that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or

callous indifference to the constitutional rights of others.'" *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993)). "The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases," and "malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages." *Id*. (citing *Smith v. Wade*, 461 U.S. 30, 34 (1983)).

Whether a motion to dispose of punitive damages is properly brought as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) or as a motion to strike under Rule 12(f) is not a fully settled issue. The Ninth Circuit has held that "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010). In *Whittlestone*, a breach-of-contract action, the district court granted a motion to strike from the complaint the plaintiff's requests for lost profits and consequential damages because it held that they were unavailable as a matter of law. *Id*. at 973. The Ninth Circuit reversed. First, the panel reasoned that the requested categories of damages did not fit into any of the five enumerated categories in Rule 12(f).[6] Second, the motion to strike "was really an attempt to have certain portions of Whittlestone's complaint dismissed . . . —actions better suited for a Rule 12(b)(6) motion," which, if permitted, would create a redundancy in the Federal Rules. *Id*. at 974. Finally, a motion to strike is reviewed on appeal for abuse of discretion, while 12(b)(6) motions are reviewed *de novo*, and allowing dismissal of parts of a pleading under Rule 12(f) would create a different standard of review than if the court had dismissed the "same substantive action under Rule 12(b)(6)." *Id*. "District courts in this Circuit have extended *Whittlestone* to include the general proposition that [a] prayer for injunctive relief (and any prayer for relief, generally) is appropriately stricken pursuant to Rule 12(f)." *Perez v. Leprino Foods Co*., No. 1:17-CV-00686-AWI-BAM, 2018 WL 1426561, at *2 (E.D. Cal. Mar. 22, 2018); *see also Oushana v.*

---

[6] The Rule reads in pertinent part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

*Lowe's Companies, Inc.*, No. 1:16-CV-01782-AWI-SAB, 2017 WL 5070271, at *2 (E.D. Cal. Nov. 3, 2017) ("Rule 12(f) may not be used to strike a request for punitive damages. The proper vehicle for challenging the sufficiency of a punitive damages claim is a motion to dismiss under Rule 12(b)(6).") (internal citations omitted); *but see Elias v. Navasartian*, No. 1:15-CV-01567-LJO-GSA-PC, 2017 WL 1013122, at *4 (E.D. Cal. Feb. 17, 2017) ("Recent court decisions have held that because a prayer for relief is a remedy and not a claim, a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a claim.") (collecting cases), *report and recommendation adopted*, No. 1:15-CV-01567-LJO-GSA-PC, 2017 WL 977793 (E.D. Cal. Mar. 13, 2017); *Shabazz v. Beard*, No. 1:15-CV-00881-DAD-EPG-PC, 2018 WL 1071173, at *10 (E.D. Cal. Feb. 27, 2018) ("The Court is not convinced, however, that a Rule 12(b)(6) motion to dismiss is the appropriate vehicle to challenge the sufficiency of a prayer for punitive damages.").

Whether construed as a motion to dismiss or a motion to strike, Defendants' motion fails. Defendants concede in reply that if the Court finds that Plaintiff has adequately alleged the first cause of action against Blakely for deliberate indifference to serious medical needs, Plaintiff could seek punitive damages. Reply at 9. Because the Court finds that the Plaintiff has alleged a claim for deliberate indifference, which requires a showing of "something akin to reckless disregard," *Castro*, 833 F.3d at 1071, and the standard for the availability of punitive damages in a 1983 action includes "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves *reckless* or callous *indifference to the federally protected rights* of others," *Dang*, 422 F.3s at 807 (emphasis added), Plaintiff's request for punitive damages survives.

Defendants argue that the prayer for punitive damages should be dismissed with respect to Plaintiff's medical negligence claim[7] as well, because California law requires that a plaintiff pursuing a

---

[7] Defendants request that punitive damages be dismissed as to the fifth and sixth causes of action, which are the claims for

claim for punitive damages against a healthcare provider must first obtain court approval under California Code of Civil Procedure § 425.13, which provides in pertinent part that "[i]n any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed." Cal. Civ. Proc. Code § 425.13(a).[8] It requires the party to establish a "substantial probability that the plaintiff will prevail on the claim" before being permitted to include a claim for punitive damages. *Id.* In opposition, Plaintiff discussed only the availability of punitive damages with respect to the § 1983 claim and failed to respond with respect to the negligence claim. Nevertheless, the Court finds that Section 425.13 is inapplicable here.

California district courts have split on whether Section 425.13 applies in federal court, and the Ninth Circuit has not resolved the split. *Elias*, 2017 WL 1013122, at *5. Most courts addressing the issue have examined whether the rule is a procedural one that would not apply in federal court, or a substantive one that it would. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In *Jackson v. E. Bay*

---

premises liability and medical negligence. The Court has dismissed the premises liability claim as to the moving Defendants.

[8] The entirety of the provisions is as follows:

(a) In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier.

(b) For the purposes of this section, "health care provider" means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. "Health care provider" includes the legal representatives of a health care provider.

Cal. Civ. Proc. Code § 425.13.

*Hosp.*, the court held that Section 425.13 "is essentially a method of managing or directing a plaintiff's pleadings, rather than a determination of substantive rights" and declined to apply it, finding that the procedural hoop was not "so intimately bound up" with the substantive law that it must be applied in a diversity case. 980 F. Supp. 1341, 1352 (N.D. Cal. 1997). Relying on the California Supreme Court's explanation that the purpose of the rule was to establish a pretrial mechanism to determine whether an action for punitive damages would be allowed to proceed, the court declined to graft this requirement onto federal litigation because "federal courts readily accomplish the purposes contemplated by section 425.13 through their case management procedures. Section 425.13 does not supplant those." *Id.* at 1353 (citing *Cent. Pathology Serv. Med. Clinic, Inc. v. Superior Court*, 3 Cal. 4th 181, 189 (1992). *See also Burrows v. Redbud Cmty. Hosp. Dist.*, 188 F.R.D. 356, 361 (N.D. Cal. 1997) ("[S]ection 425.13 is a procedural rule for managing and directing pleadings: it does not create substantive limits on the damages a plaintiff may seek."). One district court found Section 425.13 to be a procedural rule inapplicable in federal court because it conflicts with Federal Rule of Civil Procedure 8(a)(3), which provides that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). The court in *Estate of Prasad ex rel. Prasad v. County of Sutter* held that "because Rule 8(a)(3) allows a plaintiff to request in her initial complaint all the relief she seeks, it says implicitly, but with unmistakable clarity[,] that a plaintiff is not required to wait until a later stage of the litigation to include a prayer for punitive damages, nor is she required to proffer evidence or obtain leave of court before doing so." 958 F. Supp. 2d 1101, 1121 (E.D. Cal. 2013) (quoting *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1298 (11th Cir. 1999) (internal quotation marks omitted) (construing similar state law requiring leave of court to plead punitive damages claim), *opinion vacated in part on other grounds on reh'g*, 204 F.3d 1069 (11th Cir. 2000)). The Court agrees with the logic of these cases and holds that Section 425.13 does not affect the substance of the negligence claim or burden of proof for punitive damages but merely manages the pleadings by dictating how and when a plaintiff may plead the request. The claim

1  for punitive damages survives for now.  Defendants' motion to dismiss the prayer for punitive damages

2  is **DENIED**.

3  **G.    Prayer For Attorneys' Fees**

4         Defendants also urge dismissal of the prayer for attorneys' fees on two grounds.  First, they argue

5  that the causes of action for violations of § 1983 and the Bane Act should be dismissed, and the

6  provision for award of attorneys' fees in those causes of action should also be dismissed with them.

7  Mot. at 21.  The Court has denied Defendants' motion to dismiss those claims, so the possibility of an

8  award of attorneys' fees, as is statutorily provided in 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h),

9  remains alive.  Second, Defendants argue that the prayer for attorneys' fees under California Code of

10  Civil Procedure § 1021.5 is improper.  Mot. at 21. Plaintiff failed to respond to these arguments in

11  opposition.

12         Section 1021.5 provides in pertinent part:

13         Upon motion, a court may award attorneys' fees to a successful party against one or more
           opposing parties in any action which has resulted in the enforcement of an important right
14         affecting the public interest if: (a) a significant benefit, whether pecuniary or
           nonpecuniary, has been conferred on the general public or a large class of persons, (b) the
15         necessity and financial burden of private enforcement, or of enforcement by one public
           entity against another public entity, are such as to make the award appropriate, and (c)
16         such fees should not in the interest of justice be paid out of the recovery, if any.

17  Cal. Civ. Proc. Code § 1021.5.  Defendants argue that there are "no facts in the FAC to support a claim

18  under Section 1021.5" and that "[a]t this point, the claim is premature under the statute."  Mot. at 21.

19  The Court agrees that litigating this issue is premature but does not agree that this warrants dismissal of

20  the prayer for fees under Section 1021.5.  The provision requires the successful party to make a motion

21  to recover fees under specific circumstances.  Plaintiff has made no such motion, and there is at this

22  early stage of the litigation no successful party and no indication whether the other statutory

23  requirements will be met.  *See Perez v. Performance Food Grp., Inc.*, No. 15-CV-02390-HSG, 2016 WL

24  1161508, at *7 (N.D. Cal. Mar. 23, 2016) (denying request at pleading stage to strike prayer for

25  attorneys' fees under Section 1021.5, "as it requires a premature determination of the merits of

Plaintiffs' claims, which is inappropriate at the motion to dismiss stage").

Accordingly, the motion to dismiss the prayer for attorneys' fees is **DENIED**.

### V. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED IN PART** and **DENIED IN PART**:

1. Defendants' motion to dismiss Plaintiff's first cause of action against Blakely for deliberate indifference pursuant to § 1983 is **DENIED**;

2. Defendants' motion to dismiss Plaintiff's second cause of action for *Monell* liability against KCHA is **DENIED**;

3. Defendants' motion to dismiss Plaintiff's third cause of action against Blakely for violation of the Bane Act, California Civil Code § 52.1, is **DENIED** with respect to the survival claim and **GRANTED** without leave to amend with respect to Plaintiff's individual claim;

4. Defendants' motion to dismiss Plaintiff's fourth cause of action against Blakely for violation of California Government Code § 845.6 is **GRANTED** with leave to amend;

5. Defendants' motion to dismiss Plaintiff's fifth cause of action against Blakely and KCHA for negligence and premises liability is **GRANTED** with leave to amend;

6. Defendants' motion to dismiss Plaintiff's prayer for relief for punitive damages is **DENIED**;

7. Defendants' motion to dismiss Plaintiff's prayer for relief for attorneys' fees is **DENIED;**

8. Plaintiff shall file any amended complaint within 20 days of electronic service of this Memorandum Decision and Order.

IT IS SO ORDERED.

Dated:   **April 10, 2018**              **/s/ Lawrence J. O'Neill**
                                    UNITED STATES CHIEF DISTRICT JUDGE