Jeff Dominic Price  |  SBN 165534
2500 Broadway, Suite 125
Santa Monica, California 90404
jeff.price@icloud.com
Tel. 310.451.2222

Sanjay S. Schmidt  |  SBN 247475
Law Office of Sanjay S. Schmidt
1388 Sutter St., Suite 810
San Francisco, California 94109
ss@sanjayschmidtlaw.com
Tel. 415.563.8583

Attorneys for the plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SCALIA, individually and as successor-in-interest of Decedent KIMBERLY MORRISSEY-SCALIA,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KERN, KERN COUNTY HOSPITAL AUTHORITY, and ROWENA P. BLAKELY, R.N.,<br><br>Defendants. | No. 1:17-CV-01097-LJO-JLT<br><br>MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION<br><br>Date:  August 13, 2019<br>Time:  8:30 a.m.<br>Place:  4<br><br>Action filed:  August 14, 2017<br>Trial Date:  December 3, 2019 |

TO:   THE HON. LAWRENCE J. O'NEILL, CHIEF UNITED STATES DISTRICT JUDGE, AND TO THE DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLAINTIFF respectfully submits this response to Defendants' Motion for Summary Judgment or, in the Alternative, Summary Adjudication (Defendants' "Motion for Summary Adjudication"), ECF No. 67, pursuant to Fed. R. Civ. P. 56, Local Rule 260, and the Scheduling Order in this case, ECF No. 39. On April 10, 2018, the court issued its decision and order regarding Defendants' motion to dismiss the First Amended Complaint ("Order on KCHA 12(b)(6) Motion"). ECF No. 28, *Scalia v. County of Kern et al.,* 308 F.Supp.3d 1064 (E.D.Cal. 2018). The court denied Defendant Blakely's motion to dismiss the First Cause of Action for

1  deliberate indifference. *Scalia,* 308 F.Supp.3d at 1077. The court denied KCHA's

2  motion to dismiss the Second Cause of Action, the *Monell* claim. *Id.* at 1079. The

3  court denied the KCHA defendants' motion to dismiss the Third Cause of Action,

4  the Bane Act claim. *Id.* at 1084.

5      Defendants KCHA and Blakely did not move to dismiss the Sixth Cause of

6  Action for medical negligence and Defendants do not move for summary

7  adjudication on the Sixth Cause of Action. Additionally, Defendants do not move

8  for summary adjudication on Plaintiff's claim for deprivation of the right to be free

9  "from wrongful governmental interference with familial relationships and Plaintiff's

10  right to companionship, society, and support, as secured by the First and Fourteenth

11  Amendments." First Amended Complaint ("FAC") ¶ 103.c. Codefendant County of

12  Kern has not moved for summary judgment or adjudication. Thus, this motion is

13  only a motion for summary adjudication on part of the First Cause of Action, on the

14  Second Cause of Action (as to KCHA), and on the Third Cause of Action.

15      Plaintiff's response is comprised of (1) Plaintiff's Separate Statement of

16  Genuine Issues of Material Fact and Facts Controverting Statement of

17  Uncontroverted ("SGF"), in support of the opposition to Defendants' Motion for

18  Summary Adjudication, including the plaintiff's Statement of Facts Controverting

19  Defendants' Statement of Undisputed Facts ("PSUF") and Plaintiff's Objections to

20  Evidence Filed in Support of Defendants' Motion for Summary Adjudication,

21  including Plaintiff's memorandum of points and authorities on spoliation of

22  evidence by KCHA, (2) this Memorandum of Points and Authorities, (3) the

23  Declaration of Sanjay S. Schmidt, (4) the Declaration of Jeff Dominic Price, and (5)

24  the Exhibits attached to the Declaration of Jeff Dominic Price.

25      For the reasons stated here, the motion for summary adjudication should be

26  denied in its entirety, except as to KCHA's immunity under California Government

27  Code § 844.6.

28

# **Table of Contents**

Page

Table of Authorities ........................................................... 5

Memorandum of Points and Authorities ............................................. 10

I.    The Defendants' motion is limited in its scope and cannot be
      supplemented in an effort to surmount the Rule 56 burden placed on
      the moving party to show the absence of a genuine issue as to
      any material fact ...................................................... 10

II.   Statement of Facts ..................................................... 11

III.  First Cause of Action — Deliberate Indifference ....................... 16

      A.    An objective standard governs ................................... 16

      B.    Genuine issues of material fact exist that preclude summary
            adjudication on the First Cause of Action ....................... 19

IV.   First Cause of Action — Deliberate Indifference — Qualified Immunity    20

      A.    Qualified immunity doctrine ..................................... 23

      B.    Defendant Blakely does not prevail on either of the two
            prongs and is not entitled to qualified immunity ................ 24

            1.    Genuine issues of material fact remain on the first prong.   24

            2.    The law was clearly established in 2016 ................... 24

V.    Second Cause of Action — *Monell* — Ratification ...................... 25

      A.    Ratification .................................................... 25

      B.    Genuine issues of material fact preclude summary judgment
            for KCHA on ratification. ....................................... 25

VI.   Third Cause of Action — The Bane Act .................................. 26

      A.    The contours of the Bane Act .................................... 26

      B.    Genuine issue of material fact remain precluding summary
            adjudication on the Bane Act claim. ............................. 29

1          C.      Blakely is not immune for discretionary acts .. ........................... 30

2    VII.   Defendants' motion for summary adjudication on Punitive Damages

3          fails .................................................................................................... 31

4    VIII.  Conclusion  ........................................................................................ 31

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **Table of Authorities**

Page

<u>Reported Decisions</u>

*Anderson v. Liberty Lobby, Inc.*,

   477 U.S. 242 (1986)....................................................................... 10

*Association of Irritated Residents v. C & R Vanderham Dairy,*

   435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006).....................................11

*Atayde v Napa State Hosp.*,

   2016 U.S. Dist. LEXIS 126639 (E.D.Cal. 2016).................................28

*Austin B. v. Escondido Union School Dist.*,

   149 Cal. App. 4th 860 (2007) ...........................................................26

*Bell v. Wolfish*,

   441 U.S. 520 (1979)...........................................................................18

*C. V. v. City of Anaheim,*

   823 F.3d 1252 (9th Cir. 2016) ........................................................... 23

*Castro v. County of Los Angeles,*

   833 F.3d 1060 (9th Cir. 2016) (en banc) ................................... 17, 18, 19, 28, 31

*Celotex Corp. v. Catrett*,

   477 U.S. 317 (1986)........................................................................... 10

*City of St. Louis v. Praprotnik*,

   485 U.S. 112 (1988)........................................................................... 25

*Clouthier v. County of Contra Costa*,

   591 F.3d 1232 (9th Cir. 2010) ........................................................... 18

*Cornell v. City & County of San Francisco*,

   17 Cal. App. 5th 766, *as modified* (Nov. 17, 2017),
   *review denied* (Feb. 28, 2018)] ........................................................ 27

*District of Columbia v. Wesby,*

—- U.S. —-, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) .........................................24

*Doe v. State.*,
   8 Cal. App. 5th 832 (2017), *review denied* (June 14, 2017) ..............................27

*Dytch v. Yoon.*,
   2011 U.S. Dist. Lexis 22594 (N.D. Cal. Mar. 7, 2011) ....................................11

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ...........................................................................20, 25

*Gibson v. County of Washoe, Nev.*,
   290 F.3d 1175 (9th Cir. 2002) ................................................................20, 24

*Gordon v. County of Orange*,
   888 F.3d 1118 (9th Cir. 2018) .......................................................19, 20, 28, 29

*Graham v. Connor*,
   490 U.S. 386 (1989) ...........................................................................20, 28

*Henry v. County of Shasta*,
   132 F.3d 512 (9th Cir. 1997) ..................................................................... 25

*Hope v. Pelzer*,
   536 U.S. 730, 741 (2002) ........................................................................ 24

*Horphag Research Ltd. v. Garcia*,
   475 F.3d 1029 (9th Cir. 2007) .................................................................... 10

*Jett v. Penner*,
   439 F.3d 1091 (9th Cir. 2006) .....................................................................17

*Johnson v. Duffy*,
   588 F.2d 740 (9th Cir. 1978) ......................................................................16

*Jones v. Kmart Corp.*,
   17 Cal. 4th 329 (1998) ...........................................................................26

*Jones v. Williams*,
   791 F.3d 1023 (9th Cir. 2015) .....................................................................10

*Kingsley v. Hendrickson*,

135 S. Ct. 2466 (2015) ...............................................................17, 18, 19, 28

*Kisela v. Hughes*,

138 S. Ct. 1148 (2018) .....................................................................23

*Lopez v. Swaney*,

741 F.Appx. 486 (9th Cir. 2018) ......................................................20

*M. H. v. County of Alameda*,

90 F. Supp. 3d 889 (N.D.Cal. 2013) ................................................28

*McGuckin v. Smith*,

974 F.2d 1050 (9th Cir. 1992). ....................................................20, 25

*McRorie v. Shimoda*,

795 F.2d 780 (9th Cir. 1986). ...........................................................25

*Moreno v. Baca*,

431 F.3d 633 (9th Cir. 2005). ...........................................................24

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*,

210 F.3d 1099 (9th Cir. 2000) .........................................................11

*Osolinski v. Kane*,

92 F.3d 934 (9th Cir. 1996). .............................................................24

*Pembaur v. City of Cincinnati*,

475 U.S. 469 (1986) .........................................................................25

*Plumhoff v. Rickard*,

572 U.S. 765, 134 S.Ct. 2012, 2023 (2014) .....................................23

*Reese v. County of Sacramento*,

888 F.3d 1030 (9th Cir. 2018). .........................................................28

*S. B. v. County of San Diego*,

864 F.3d 1010 (9th Cir. 2017). .........................................................23

*Scalia v. County of Kern*,

308 F.Supp.3d 1046 (E.D.Cal. 2018)...........................................*passim*

*Scott v. Harris*,

550 U.S. 372 (2007)................................................10

*Smith v. Wade*,

461 U.S. 30 (1983) ................................................31

*T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,

809 F.2d 626 (9th Cir. 1987) ............................... 10

*Tolan v. Cotton*,

572 U.S. 650, 134 S.Ct. 1861 (2014)...................23, 24

*United States v. Lanier*,

520 U.S. 259 (1997)................................................24

*United States ex rel. Giles v. Sardie*,

191 F.Supp.2d 1117 (C.D.Cal. 2000) ......................11

*White v. Pauly*,

— U.S. —, 137 S.Ct. 548, 552 (2017)........................23

*Young v. County of Los Angeles*,

655 F.3d 1156 (9th Cir. 2011) ..............................24

*Zamani v. Carnes*,

491 F.3d 990 (9th Cir. 2007) ..............................11

## Federal Statutes

42 U.S.C § 1983 ...................................16, 17, 18, 19, 30, 31

## Federal Rules of Civil Procedure

Fed. R. of Civ. P. 56................................... 10, 11, 26

## Federal Model Jury Instructions

Ninth Circuit Manual of Model Civil Jury Instructions 9.30 ................. 21

## State Constitutions and Statutes

California Constitution, Article I, § 1 ................................27

California Constitution, Article I, § 7 ...............................................................27

Cal. Civil Code § 43 ........................................................................................27

Cal. Civil Code § 52.1 .....................................................................................26

Cal. Govt. Code § 845.6 ...................................................................................27

## Memorandum of Points and Authorities

**I.  The Defendants' motion is limited in its scope and cannot be supplemented in an effort to surmount the Rule 56 burden placed on the moving party to show the absence of a genuine issue concerning any material fact**

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. *Id.* at 322-23; *Jones v. Williams*, 791 F.3d 1023, 1030 (9th Cir. 2015).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting former Fed. R. Civ. P. 56(e)); *accord Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).

A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). A court should not weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed." *Id.*

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." *Id*. at 1103.

"It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *Dytch v. Yoon,* 2011 U.S.Dist.Lexis 22594, at *9 (N.D.Cal. March 7, 2011) (*quoting United States ex rel. Giles v. Sardie,* 191 F.Supp.2d 1117, 1127 (C.D.Cal. 2000)). "The district court need not consider arguments made for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *see also, Association of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) (refusing to consider parts of reply brief significantly expanding on argument that was "inadequately developed in the initial motion" and raised issues not briefed in initial motion and not addressed by the plaintiff in opposition).

This response addresses the facts and arguments presented by Defendants in their motion and it will be shown that the Defendants' motion falls far short of the burden imposed on the Defendants by Rule 56.

## II.    Statement of Facts

On June 21, 2016, after a dispute broke out between her and Sonia McPherson, who was a boarder in her house, Kimberly Morrissey-Scalia ("Ms. Scalia") was arrested at her home in Taft, California, where she resided with her husband, the plaintiff, John Scalia. Because of alcohol withdrawal Ms. Scalia was put on an alcohol detox regimen by Kern County Sheriff's Office personnel when she was at the Kern County Central Receiving Facility ("CRF") in Bakersfield, California. PSUF 100. On June 27, 2016, Ms. Scalia was transferred from CRF to

the Lerdo Pre-Trial Facility ("Lerdo"), located at 17695 Industrial Farm Road, Bakersfield, California, and at approximately 7:48 p.m. she was housed in Pod B, Unit 6, cell 605, upper bunk at Lerdo. Exhibit 40, PSUF 101. Cell B-605 was a two-person cell with upper and lower bunks. At the time of Mrs. Scalia's arrival, the cell housed Felicia Thornton, who occupied the lower bunk.

At 11:15 p.m. Ms. Scalia fell off of the top bunk in cell B-605 and hit her arm, leg and head. Exhibit 1007-1, PSUF 102. The top bunk in B-605 was more than 4½ feet above the floor. PSUF 102. Deputy Misty Miller spoke directly with Ms. Scalia, who had pressed the cell intercom button. PSUF 102. Deputy Miller contacted Deputy Randi Allen, who responded to cell B-605. PSUF 103. Ms. Scalia told Deputy Allen that she wanted medical attention. PSUF 104. Deputy Miller and Ms. Scalia walked out of Unit 6. PSUF 105. When they arrived in the sally port Ms. Scalia began to cry and said "I can't walk." PSUF 106. Deputy Allen retrieved a wheelchair and took Ms Scalia to the Infirmary in the wheelchair. PSUF 106. It was apparent to a lay person – e.g., Deputy Allen – that when Ms. Scalia fell onto a concrete floor onto her head from a distance of more than 4½ feet she suffered head trauma, a serious medical condition. PSUF 107.

Upon arrival Deputy Allen informed Defendant Blakely that Ms. Scalia had fallen off her bunk and hit her head. SUF 16. Defendant Blakely took Ms. Scalia's blood pressure, checked her pulse, checked her respiration, took her temperature, and dispensed her medication. SUF 19; Exhibit 152, PSUF 108. Defendant Blakely noted that Ms. Scalia's report of falling off her bunk and hitting her head was "subjective" and set a June 30, 2016, follow-up appointment with a doctor for the injuries Ms. Scalia sustained in the fall from the top bunk and ordered her returned to a jail cell, specifying a lower tier, lower bunk. PSUF 109. In response, Deputy Miller called Classification to have Ms. Scalia rehoused. PSUF 110. Kern CJIS

shows that Ms. Scalia's housing was changed from cell B-605 to cell B-310 at 11:19 p.m.; Deputy Allen took Ms. Scalia to cell B-310 in the wheelchair. PSUF 112

Defendant Blakely did nothing to assess or treat Ms. Scalia's head injury on June 27, 2016. PSUF 113. Blakely did not perform any neurological tests on Ms. Scalia; according to the Lerdo Progress Notes she did not:

1. Obtain a description of her injuries;
2. Obtain a description of the fall;
3. Ask Ms. Scalia what her name was;
4. Ask her what her date of birth was;
5. Ask her where she was;
6. Observe her gait;
7. Ask her to get up from the wheelchair to observe her balance;
8. Observe her pupils;
9. Assess her grip;
10. Perform the pronator shift test;
11. Obtain a history of loss of consciousness;
12. Consult a physician; or
13. Hold her in the Infirmary for observation. [PSUF 113].

Defendant Blakely admitted that on June 27, 2016, she was aware that Ms. Scalia had fallen from a top bunk and collided with a concrete floor. PSUF 111. On June 23, 2016, Defendant Blakely knew that Ms. Scalia was being treated for alcohol withdrawal because she observed her and filled out the Inmate Observation Check List for that day. PSUF 114. Defendant Blakely alone made the decision to return Kimberly Morrissey-Scalia to an unmonitored jail cell shortly after 11:15 p.m. on June 27, 2016. PSUF 131.

At approximately 2:23 a.m. on June 28, 2016, Veronica Navarrete awoke in cell B-310 and saw her cellmate, Ms. Scalia, on the floor, face down. PSUF 115. Ms. Scalia's face was blue and she was unconscious and not breathing. PSUF 116. Ms. Navarrete pressed the emergency intercom button and asked the deputy to "come fast." PSUF 117. Deputy Allen arrived at cell B-310 at 2:24 a.m. PSUF 118. Deputy Allen saw that Ms. Scalia was "lying on the floor of her cell unconscious but

breathing." PSUF 119. Ms. Scalia was "still vomiting at this point." PSUF 120.
After nursing staff arrived the deputies picked Ms. Scalia up and moved her to a
gurney to be transported to the Infirmary. PSUF 121. Sgt. Alkire also saw that Ms.
Scalia was unconscious. PSUF 122. Sgt. Alkire also observed that Ms. Scalia's
hands and toes were curled in. PSUF 123.

Ms. Scalia was placed in an ambulance at approximately 3:10 a.m. and taken
to the Kern Medical Center ("KMC") Emergency Room. PSUF 124. The ambulance
arrived at KMC at 3:37 a.m. PSUF 125. Defendant Blakely was the person who
spoke to the paramedic, Manuel Hernandez, who arrived in the ambulance to take
Ms. Scalia to the ER. PSUF 126. Defendant Blakely did not tell Paramedic
Hernandez that Ms. Scalia had been unconscious. PSUF 127. Defendant Blakely did
not tell Paramedic Hernandez that Ms. Scalia had fallen from a top bunk and struck
her head on the concrete floor. PSUF 128. Defendant Blakely did not consult with a
doctor about Ms. Scalia, at any time. PSUF 130. Blakely did not report on the
Referral form, Exhibit 151, that Ms. Scalia was unconscious or that her hands and
toes were curled in. PSUF 135. Blakely did not report on the Referral form that
there was vomit all over the toilet in cell B-310 at 2:30 a.m. PSUF 136. Blakely did
not report on the Referral form, which she filled out at approximately 2:30 a.m. on
June 28, 2016, that the night before at 11:15 p.m. Ms. Scalia fell 4½ feet from a top
bunk, struck her head on the concrete, and could not walk and likely suffered from a
head injury. PSUF 137. Nowhere on the Referral or anywhere else did Defendant
Blakely alert KMC that Ms. Scalia likely suffered from a head injury. PSUF 138.

An appropriate assessment for any patient who has sustained a head injury
from a fall would include, in addition to full vital signs:

    1. Mental status evaluation;

    2. Neurological observations including pupil response to light, limb
       movement and limb strength and balance;

3.  A description of injuries;

4.  A description of the fall; and

5.  History of loss of consciousness.

K. Wild Rule 26 Report p. 11, PSUF 139.

The first person to attend to Ms. Scalia at the KMC ER was the triage nurse, Rico Reynolds, at 3:47 a.m. on June 28, 2016. PSUF 139. Dr. Konye, the ER physician, did not see Ms. Scalia until 4:30 a.m. SGF 40A (The facility physician (Konye) arrived at 4:30 a.m.). At 4:56 a.m. a chest X-ray was administered to Ms. Scalia. PSUF 140. Immediately after the chest X-ray was administered Ms. Scalia became incontinent. PSUF 141. The CT scan could not be administered to Ms. Scalia until she was stabilized. PSUF 142. Ms. Scalia was intubated at 5:36 a.m. PSUF 143. At 5:52 a.m. Deputy King noted that the CT scan of Ms. Scalia's head revealed a "major bleed over [the left] eye." PSUF 144. The CT scan revealed a left subdural hematoma with midline shift.

At 7:24 a.m. Deputy King wrote in the log that Sgt. Graves was notified that Ms. Scalia was going into emergency surgery. PSUF 145. At approximately 8:20 a.m. on June 28, 2016, Ms. Scalia underwent a craniotomy surgical procedure in the KMC ER. SUF 45. The craniotomy was unsuccessful, necessitating that Ms. Scalia undergo a craniectomy, which was performed on the night of June 28, 2016, and was also unsuccessful and from which she did not recover. Exhibit 1018; SGMF 46A. Ms. Scalia expired from a "large left subdural hematoma and traumatic brain injury." Discharge Summary; PSUF 146.

Defendant Blakely's evaluation of Ms. Scalia on June 27, 2016, was so cursory and unfocused that it constituted no assessment at all. Based on Ms. Scalia's history, at a minimum, Defendant Blakely should have made a thorough assessment of this patient, including a neurological evaluation and called the ER provider for direction; minimally, Defendant Blakely should have kept Ms. Scalia under

observation in the Infirmary, where she could have monitored her condition closely. PSUF 147. Defendant Blakely did not perform a complete and full evaluation of Ms. Scalia, a deviation from the standard of care in a head trauma patient; this decision delayed access to care for the decedent and, therefore, initiation of the proper work-up and ultimately the timely treatment (i.e. surgical intervention) necessary to save her life. PSUF 148. The delay in arriving to KMC and the wrongful suggestion (memorialized in the Hall Ambulance record, "brought in tonight for possible 'EtOH'") likely delayed the initiation of the appropriate work-up, which then led to further delay in the ultimate identification of a large subdural hematoma with significant brain compression (as evidenced on the CT scan, with an associated midline shift of approximately 16mm). PSUF 149. Kimberly Ann Morrissey-Scalia died as a result of delayed diagnosis and treatment for a fall that resulted in a large subdural hematoma that worsened over time. PSUF 150. Ms. Scalia's inability to walk from the outset and her altered mental status was indicative of a serious intracranial process that required emergency treatment. PSUF 151. Had Ms. Scalia been transferred to a hospital immediately, she would have survived; the conditions of cirrhosis of the liver and end-stage liver disease and/or coagulopathy played no role in Ms. Scalia's ultimate demise. PSUF 152.

## III.    First Cause of Action — Deliberate Indifference

### A.    An objective standard governs

The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

This court already set out the deliberate indifference standard applicable in this case:

A § 1983 action premised on violation of the Fourteenth Amendment for inadequate medical care requires allegations that each defendant acted with deliberate indifference to the decedent's serious medical needs. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc). . . .

The test for demonstrating deliberate indifference is in two parts. First, a plaintiff "must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). Second, a plaintiff must show that "the defendant's response to the need was deliberately indifferent." *Id*. A showing of deliberate indifference requires demonstrating "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotation marks and citation omitted).

. . . . Following the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and the Ninth Circuit's decision in *Castro*, 833 F.3d 1060, the applicable standard for a pretrial detainee's claim of deliberate indifference to a serious medical need is now less clear. In *Kingsley*, the Supreme Court held that a pretrial detainee bringing an excessive force claim under § 1983 must satisfy an objective standard with respect to whether an official's use of force was excessive, not a subjective standard that takes a defendant's state of mind into account. 135 S. Ct. at 2472. The Court held that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," a determination made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Id*. at 2473. The Ninth Circuit held in *Castro* that even though *Kingsley* "did not squarely address whether the objective standard applies to all kinds of claims by pretrial detainees" under the Fourteenth Amendment, failure-to-protect claims, such as prison officials' failure to protect an inmate from violence at the hands of other inmates, brought by pretrial detainees also are subject to an objective standard, reasoning that *Kingsley*'s logic applied with equal force to failure-to-protect claims. 833 F.3d at 1069. First, § 1983 does not contain a scienter requirement, and the "underlying federal right, as well as the nature of the harm suffered, is the same for pretrial detainees' excessive force and failure-to-protect claims." *Id*. Moreover, both excessive force and failure-to-protect claims "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth

Amendment's Cruel and Unusual Punishment Clause." *Id*. at 1069-70. The two clauses are worded differently, often have differing claims, and "most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id*. at 1070 (quoting *Kingsley*, 135 S. Ct. at 2575). Finally, the Ninth Circuit took note of *Kingsley*'s broad wording and discussion of "'challenged governmental action' generally," rather than limiting the announced principles to cases involving "force." *Id*. at 1070 (quoting *Kingsley*, 135 S. Ct. at 2473-74 ("*Bell* [*v. Wolfish*, 441 U.S. 520, 522 (1979)]'s focus on 'punishment' does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated. Rather, as *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that the *challenged governmental action* is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." (emphasis supplied))). *Castro* overruled a prior holding "to the extent that it identified a single deliberate indifference standard for all § 1983 claims and to the extent that it required a plaintiff to prove an individual defendant's subjective intent to punish in the context of a pretrial detainee's failure-to-protect claim." *Id*. The court held that while a pretrial detainee bringing a failure-to-protect claim need not show a defendant's subjective awareness of the level of risk, a plaintiff bringing such a claim must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*. at 1071 (citing Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) for the proposition that "reckless disregard may be shown by an objective standard under which an individual is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it" (internal quotation marks omitted)).

. . . . .

The Court finds that under *Castro*'s reasoning, a pretrial detainee's claim for medical deliberate indifference is subject to a solely objective standard. *Castro* overruled the holding in *Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010), that § 1983 claims based on deliberate indifference are subject to the same standards whether brought pursuant to the Eighth or Fourteenth Amendments and instead held that a pretrial detainee bringing a deliberate indifference claim based on failure to protect need not prove a defendant's subjective intent to punish. 833 F.3d at 1070. . . . .

Many of the reasons the *Castro* court gave for holding that deliberate indifference claims based on failure to protect are sufficiently akin to excessive-force claims to apply an objective standard – that § 1983 contains no scienter requirement; that excessive-force and failure-to-protect claims are both rooted in the Fourteenth Amendment, rather than the Eighth Amendment; and that *Kingsley* discusses in broad terms "challenged governmental action" without restricting its language to claims arising from alleged use of excessive force – apply equally to deliberate indifference claims based on failure to address serious medical needs as they do to deliberate indifference claims based on failure to protect.

. . . . .

In short, the Court does not read *Castro* to strip pretrial detainees' deliberate indifference cases of a subjective requirement *only* if they arise in the context of a claim for failure to protect. . . . The Court finds that an objective test for deliberate indifference applies to Plaintiff's claim.

Order on KCHA 12(b)(6) Motion, April 10, 2018, pp. 4-10, *Scalia v. County of Kern,* 308 F.Supp.3d 1064, 1072-75 (E.D.Cal. 2018).

On April 30, 2018, the Ninth Circuit mirrored this court's reasoning in the case of *Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018). In *Gordon* the court held:

[C]laims for violations of the right to adequate medical care "brought by pretrial detainees against individual defendants under the Fourteenth Amendment" must be evaluated under an objective deliberate indifference standard. *Castro,* 833 F.3d at 1070. Based thereon, the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* at 1071 (quoting *Kingsley,* 135 S.

Ct. at 2473; *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).

*Gordon,* 888 F.3d at 1124-25, *accord Horton v. City of Santa Maria,* 915 F.3d 592, 602 (9th Cir. 2019).

### B.    Genuine issues of material fact exist that preclude summary adjudication on the First Cause of Action

Defendant Blakely is not entitled to summary adjudication on the First Cause of Action — Deliberate Indifference. The Defendants have failed to show that undisputed facts result in a determination that they are entitled to judgment as a matter of law.

A claim for failure to provide care for serious medical needs brought on behalf of a pretrial detainee requires a showing of deliberate indifference. *Gordon,* 888 F.3d 1124-25; *see also Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1187 (9th Cir. 2002) (reversed on other grounds). An official's actions or omissions manifest deliberate indifference when the official knows of and disregards an excessive risk to a detainee's health and safety. *Id.* It has long been settled that deliberate indifference is shown where an official "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or possible medical need." *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir. 1992) (reversed on other grounds). "The denial of medical care in the face of an obvious emergency constitutes deliberate indifference." *Lopez v. Swaney,* 741 F.Appx. 486, 487 (9th Cir. 2018); *see also Farmer v. Brennan,* 511 U.S. 825, 842 (1994) ("[A] prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it.").

The Ninth Circuit Manual of Model Civil Jury Instructions ("Ninth Circuit Model Civil Jury Instructions") defines the elements of the deliberate indifference claim as follows:

1. The defendant made an intentional decision regarding the denial of needed medical care;

2. The denial of needed medical care put the plaintiff at substantial risk of suffering serious harm;

3. The defendant did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved — making the consequences of the defendant's conduct obvious; and

4. By not taking such measures the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable.

Ninth Circuit Model Civil Jury Instructions No. 9.30 (2019).

Plaintiff has produced affirmative evidence showing that Defendants' evidence does not show that the plaintiff has failed to establish an essential element of his case and establishing that the plaintiff has shown that there exist genuine issues of material fact precluding summary judgment.

At 11:15 p.m. Ms. Scalia fell off of the top bunk in cell B-605 and hit her arm, leg and head. Exhibit 1007-1, PSUF 102. Ms. Scalia told Deputy Allen that she wanted medical attention. PSUF 104. Deputy Miller and Ms. Scalia walked out of Unit 6. PSUF 105. When they arrived in the sally port Ms. Scalia began to cry and said "I can't walk." PSUF 106. Deputy Allen retrieved a wheelchair and took Ms. Scalia to the Infirmary in the wheelchair. PSUF 106. It was apparent to a lay person – e.g., Deputy Allen – that when Ms. Scalia fell onto a concrete floor onto her head from a distance of more than 4½ feet she suffered head trauma, a serious medical condition. PSUF 107. Upon arrival Deputy Allen informed Defendant Blakely that Ms. Scalia had fallen off her bunk and hit her head. SUF 16. Defendant Blakely noted that Ms. Scalia's report of falling off her bunk and hitting her head was "subjective" and set a June 30, 2016, follow-up appointment with a doctor for the injuries Ms. Scalia sustained in the fall from the top bunk and ordered her returned to a jail cell, specifying a lower tier, lower bunk. PSUF 109. Defendant Blakely did nothing to assess or treat Ms. Scalia's head injury on June 27, 2016. PSUF 113. Blakely did not perform any neurological tests on Ms. Scalia. *Id.* Defendant Blakely admitted that on June 27, 2016, she was aware that Ms. Scalia had fallen from a top bunk and collided with a concrete floor. PSUF 111. Defendant Blakely alone made the decision to return

Kimberly Morrissey-Scalia to an unmonitored jail cell shortly after 11:15 p.m. on June 27, 2016. PSUF 131. Defendant Blakely did not tell Paramedic Hernandez that Ms. Scalia had been unconscious. PSUF 127. Defendant Blakely did not tell Paramedic Hernandez that Ms. Scalia had fallen from a top bunk and struck her head on the concrete floor. PSUF 128. Defendant Blakely did not consult with a doctor about Ms. Scalia, at any time. PSUF 130. Blakely did not report on the Referral form, Exhibit 151, that Ms. Scalia was unconscious or that her hands and toes were curled in. PSUF 135. Blakely did not report on the Referral form, which she filled out at approximately 2:30 a.m. on June 28, 2016, that the night before at 11:15 p.m. Ms. Scalia fell 4½ feet from a top bunk, struck her head on the concrete, and could not walk and likely suffered from a head injury. PSUF 137. Nowhere on the Referral or anywhere else did Defendant Blakely alert KMC that Ms. Scalia likely suffered from a head injury. PSUF 138.

Blakely's sending Mrs. Scalia away without any treatment or assessment — the denial of medical care — put Mrs. Scalia at substantial risk of suffering serious harm. After 3 hours elapsed Mrs. Scalia was vomiting and was found on the floor at 2:24 a.m. unconscious, not breathing and not responsive. She did not arrive at the ER until 3:37 a.m. and was not seen by a triage nurse until 3:47 a.m. Because of Defendant Blakely's substandard and deliberately indifferent Referral form, Exhibit 151, Ms. Scalia was not seen by a doctor until 4:30 a.m. At 4:56 a.m. she became incontinent and was unable to get a CT scan, which did not occur until approximately 6:00 a.m. and which revealed a large subdural hematoma. She died of blunt force trauma to the head, a large left subdural hematoma and traumatic brain injury. Autopsy Report, Exhibit 1019, Discharge Summary, Exhibit 1000.

Blakely did not take reasonable available measures to abate or reduce the risk of serious harm to Mrs. Scalia when she saw her minutes after 11:15 p.m. A reasonable correctional nurse under the circumstances would have, in addition to taking vital signs (1) Performed a mental status evaluation; (2) Performed Neurological observations including pupil response to light, limb movement and limb strength and balance; (3) Taken a description of the injuries; (4) Taken a description of the fall; and (5) Obtained a history of loss of consciousness. SGF 139.

## IV.   First Cause of Action — Deliberate Indifference — Qualified Immunity

### A.   Qualified immunity doctrine

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S.Ct. 548, 551, 196 L. Ed. 2d 463 (2017)).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Tolan v. Cotton*, 572 U.S. 650, 134 S.Ct. 1861, 1865 (2014) (internal quotation marks and alteration notations omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation." *Id.* at 1866 (internal quotation marks omitted). Under the second prong of the test for qualified immunity, the Court must determine whether the plaintiff's right "was clearly established at the time of the officer's alleged misconduct." *S. B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *C. V. v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016)). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela*, 138 S.Ct. at 1153 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 134 S.Ct. 2012, 2023 (2014)).

However, "general statements of the law are not inherently incapable of giving fair and clear warning to officers." *White v. Pauly*, — U.S. —, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam) (internal quotation marks omitted). In some circumstances, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question,

even though the very action in question has [not] previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (1997) (internal quotation marks omitted); *see District of Columbia v. Wesby*, —- U.S. —-, 138 S.Ct. 577, 581, 199 L.Ed.2d 453 (2018) ("[T]here can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.") (internal quotation marks and citations omitted). "The Supreme Court has explained that, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances,' and has rejected, 'a requirement that previous cases be fundamentally similar' to the facts at issue in a suit." *Young v. County of Los Angeles*, 655 F.3d 1156, 1167 (9th Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see also Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (permitting use of persuasive authority in analysis).

When considering the two prongs of the qualified immunity doctrine, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan,* 134 S.Ct. at 1866. Defendants must prove they are entitled to qualified immunity. *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

### B. Defendant Blakely does not prevail on either of the two prongs and is not entitled to qualified immunity

#### 1. Genuine issues of material fact remain on the first prong

As set out above in Section III.B, Plaintiff has produced affirmative evidence raising a genuine issue of material fact on each of the elements of the deliberate indifference claim against Defendant Blakely.

#### 2. The law was clearly established in 2016

The Ninth Circuit has stated that "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson,* 290 F.3d at 1187. It has long been settled that deliberate

indifference is shown where an official "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or possible medical need." *McGuckin,* 974 F.2d at 1060; *see also Farmer, supra,* 511 U.S. at 842.

## V.  Second Cause of Action — *Monell* as to KCHA — Ratification

### A.  Ratification

Ratification can be a basis for governmental liability when an authorized policymaker affirms that in performing the challenged conduct, the employee was executing official policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). Whether a governmental decision maker has final policymaking authority is a question of law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

### B.  Genuine issues of material fact preclude summary judgment for KCHA on ratification

Post-event evidence may be used to prove the existence of KCHA's policy and ratification. *See Henry v. County of Shasta,* 132 F.3d 512, 518 (9th Cir. 1997). A policy or custom may be inferred if, after the allegedly unconstitutional treatment of Ms. Scalia, KCHA officials took no steps to reprimand those responsible or if it otherwise failed to admit the conduct was in error. *See McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir. 1986).

Kimberly Morrissey-Scalia was pronounced dead on July 1, 2016, at 5 minutes past midnight. KCHA came into existence at 11:59 p.m. on June 30, 2016. The death review that was conducted by Kern County was not completed until April 16, 2018. PSUF 154. After KCHA took over Kern Medical from Kern County in

mid-2016 KCHA promulgated new policies. The ACS 114.00 Policy Statement provides: "It is the policy of Kern Medical Center to provide a medical review of every in-custody death." Policy ACS 114.00 required that KCHA conduct an in depth evaluation of an in custody death, establishment of a team, evaluation of all circumstances surrounding the death from a medical perspective, and identify possible problems in the care provided or in the policies and procedures. PSUF 157. Margaret Johnson was the Clinical Director of Correctional Medicine for KCHA after June 2016 and until 2019, a final policymaker for KCHA as to correctional medicine, and was part of the Inmate Death Review. PSUF 155.

KCHA's sole argument for summary judgment on Plaintiff's *Monell* claim is founded on its assertion that it did not employ Defendant Blakely until July 1, 2016. KCHA has failed to meet its burden under Rule 56. Despite the fact that there ACS 114.00 required an in depth review of every inmate death Johnson and KCHA conducted no review of the death of Kimberly Morrissey-Scalia. PSUF 158. Defendant Blakely was never even interviewed. This complete failure to conduct any investigation into the death of Ms. Scalia even where its policy required it, including the failure to even interview Blakely, constitutes a deliberate choice by KCHA to approve of Blakely's conduct and the bases for it.

## VI.    Third Cause of Action — California Civil Code § 52.1

### A.    The contours of the Bane Act

As this court stated in its April 10, 2018, decision, California Civil Code section 52.1 ("the Bane Act") authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion. *See* Cal. Civ. Code § 52.1(a); *see also Jones v. Kmart Corp.,* 17 Cal. 4th 329, 338 (1998) (interpreting Bane Act's use of "interferes" to mean "violates"); *Austin B. v. Escondido Union School Dist.,* 149

Cal. App. 4th 860, 883 (2007); *Doe v. State,* 8 Cal. App. 5th 832, 842 (2017), *review denied* (June 14, 2017); *Scalia v. Cty. of Kern,* 308 F.Supp.3d 1064, 1079-80.

Plaintiff brings a Bane Act claim as a survival claim on behalf of the decedent, Kimberly Morrissey-Scalia.

Addressing the conflicting caselaw on the reach of the Bane Act, this court stated:

> The Court finds the reasoning in *Cornell* [*v. City & County of San Francisco,* 17 Cal. App. 5th 766, *as modified* (Nov. 17, 2017), *review denied* (Feb. 28, 2018)] persuasive. As *Cornell* discusses, nothing in the text of the Bane Act requires that the coercion element be separate from the underlying constitutional or statutory violation. Moreover, a prison official's deliberate indifference to serious medical needs is a coercive act that rises above mere negligence of the sort that concerned the *Shoyoye* court. Applying the intent test laid out in *Cornell*, the Court finds that Plaintiff has stated a claim for relief under the Bane Act. First, the right at issue, the right to be free from deliberate indifference to one's serious medical needs, is "clearly delineated and plainly applicable" to the circumstances. *Cornell*, 17 Cal. App. 5th at 803. Second, Plaintiff has adequately pleaded that Blakely acted with "the particular purpose of depriving the [plaintiff] victim of his enjoyment of the interests protected by" the Fourteenth Amendment, and under this standard, pleading "[r]eckless disregard of the 'right at issue' is all that [i]s necessary." *Id.* The Court has found that Plaintiff adequately pleaded a claim for deliberate indifference, which requires alleging reckless disregard; Plaintiff has therefore adequately alleged that Blakely acted with the requisite specific intent under the Bane Act.

*Scalia,* 308 F.Supp.3d at 1081, 1083-84 (footnote omitted).

In this case, Plaintiff's Bane Act claim is predicated on a deprivation of the decedent's right to medical care under the due process clause of the Fourteenth Amendment, as well as Article I, §§ 1 and 7 of the California Constitution, California Civil Code § 43 (right to protection from harm, inter alia), and the right to medical care required by Government Code § 845.6. ECF No. 15 at 37:4-27. As state above in Section III.B, the elements of a pretrial detainee's claim for deprivation of medical care are: (i) the defendant made an intentional decision with

respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "'With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Gordon*, 888 F. 3d at 1125 (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) (internal quotation marks omitted); *Graham v. Connor*, 490 U.S. 386, 396, (1989)). A reasonable jury could find each one of these elements is met, as is explained below.

It is settled that deliberate indifference to an inmate's right to medical care in a jail can form the basis for a Bane Act claim. This court stated in its April 10, 2018, Order: "[A] prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights . . . adequately states a claim for relief under the Bane Act." *Scalia*, 308 F. Supp. 3d at 1084 (quoting *M. H. v. County of Alameda*, 90 F. Supp. 3d 889, 898-99 (N.D.Cal. 2013)). This is so, because "threats, coercion, and intimidation are inherent in a deliberate indifference claim." *Atayde v Napa State Hosp.*, 2016 U.S. Dist. LEXIS 126639, *23 (E.D.Cal. 2016).

The Bane Act claim based on deliberate indifference can be established by showing "[r]eckless disregard of the 'right at issue'" on the part of the Defendant. *Scalia*, 308 F. Supp. 3d at 1084; *accord Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) ("it is not necessary for the defendants to have been

'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'") (emphasis in original).

A reasonable jury could find a Bane Act violation because the elements for the decedent's Fourteenth Amendment due process claim under *Gordon*, *supra*, are satisfied for the reasons set forth in Section III above.

## B. Genuine issues of material fact remain precluding summary adjudication on the Bane Act claim

Defendant Blakely, who "was the gatekeeper to provide access to a higher level of care," for Mrs. Scalia including the urgent care she required, *see* K. Wild Rule 26 Report, p. 11, was deliberately indifferent to the threat of serious harm to Ms. Scalia, resulting in her untimely death.

Additionally, Defendant Blakely knew Mrs. Scalia had been placed on the alcohol detox program and she knew or should have known of the risk that alcoholics are susceptible to bleeding and have unique bleeding risks after trauma. PSUF 147.

As explained by Dr. Yashar:

> Cascades of delays resulted in a CT scan being performed about 6 hours after the initial head trauma, after the patient was identified to have a "blown" pupil (i.e. one that is nonreactive to light, and dilated relative to the other side), which is further evidence of a significant amount of brain injury, brainstem compression, and poor prognosis. . . . In a more recent study by Clusman, et al., patients with fixed-dilated pupils were found to have poor outcomes, with surgical evacuation and early intervention providing better outcomes for chances of survival and recovery. In the case of the decedent, the delay in arrival to KMC led to a delay in diagnosis, while simultaneously the process of an intracranial acute subdural hematoma was progressing, which led to a delayed CT performed after the patient's pupil was noted to be fixed and dilated. Had the decedent been appropriate[ly] sent to the ED after the initial fall, a CT would have appropriately identified the acute

subdural hematoma, and any necessary and immediate surgical
intervention could have performed, if indicated, likely saving her life.

P. Yashar, M.D., Rule 26 Report, p. 12 (footnote omitted), PSUF 153.

Defendant Blakely's conduct in failing to treat or assess Ms. Scalia for head
trauma, failing to place Mrs. Scalia under observation in the Infirmary, failing to
consult with a physician, and falsifying the Referral form to be presented to KMC
ER caused the decedent's death. *See* P. Yashar, M.D., Rule 26 Report, pp. 10-11.

Plaintiff has produced affirmative evidence creating genuine issues of
material fact as the evidence shows that Defendant Blakely's acts and omissions
evidenced reckless disregard for the decedent's right to adequate medical care. *See* §
III.B, *supra,* pp. 19:13-20:9. Thus, a reasonable jury could find Plaintiff has
established a Bane Act claim on behalf of the decedent. Accordingly, summary
adjudication of this claim is precluded.

## C.   Blakely is not immune for discretionary acts

Defendants state that Blakely engaged in discretionary acts when interacting
with Kimberly Morrissey-Scalia. SUF No. . "[A] discretionary act is one which
requires the exercise of judgment or choice. Discretion has also been defined as
meaning equitable decision of what is just and proper under the
circumstances." *C.N. v. Wolf,* 410 F.Supp.2d 894, 902 (C.D.Cal.2005)
(quoting *Burgdorf v. Funder,* 246 Cal.App.2d 443, 449, 54 Cal.Rptr. 805 (1966)).

Discretionary immunity under California Government Code § 820.2 does not
apply to immunize Defendant Blakely in the context of the Bane Act claim because
Defendant Blakely was not making a "policy decision." *Mendez v. County of Los
Angeles,* 897 F.3d 1067, 1083-84 (9th Cir. 2018).

## VII.   Defendants' motion for summary adjudication on Punitive Damages fails

Punitive damages are available in a § 1983 action when a defendant's conduct
"is shown to be motivated by evil motive or intent, or when it involves reckless or

callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (same). A § 1983 punitive damages claim is subject to summary adjudication "where plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions." *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1214 (E.D. Cal. 2008) (internal quotation marks omitted).

There is a genuine dispute as to material facts on the claim that Defendant Blakely was deliberately indifferent to the rights of the decedent, Kimberly Morrissey-Scalia, and a claim deliberate indifference for deliberate indifference requires a showing of "something akin to reckless endangerment," *Castro,* 833 F.3d at 1071, the Defendants' motion should be denied. Plaintiff has produced evidence that creates genuine disputes as to whether Defendant Blakely exhibited reckless disregard for the safety of Ms. Scalia when she failed to conduct any neurological tests and actually failed to provide Ms. Scalia any treatment for a head injury when she saw Ms. Scalia at approximately 11:19 p.m. in the Lerdo Infirmary. Thus, summary judgment on plaintiff's claim for punitive damages should be denied.

## VIII.   Conclusion

The defendants' Motion for Summary Adjudication should be denied in its entirety, except as to KCHA's immunity under Gov. Code § 844.6.

Dated: July 30, 2019

Respectfully submitted,

_____/s/ Jeff Dominic Price_____

Jeff Dominic Price
Of Attorneys for Plaintiff