UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SCALIA, individually and as successor-in-interest of Decedent KIMBERLY MORRISSEY-SCALIA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF KERN, et al.,<br><br>Defendants. | 1:17-cv-01097-LJO-SKO<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 67) |

## I. INTRODUCTION

This case arises from the death of Kimberly Morrissey-Scalia, who died after falling from her bunk while she was a pretrial detainee at Kern County Jail. Decedent's husband, John Scalia ("Plaintiff"), brings claims individually and on behalf of his late wife's estate. Plaintiff brings this case against Kern County, Kern County Hospital Authority ("KCHA"), Kern County Sheriff Donny Youngblood, Kern County Sheriff's Sergeant Joel Swanson, Kern County Sheriff's Detention Deputies Randi Allen and Misty Miller, KCHA Staff Nurse Rowena P. Blakely, and Does 1-100, alleging deliberate indifference under 42 U.S.C. § 1983 and state law causes of action. Having carefully considered the record in this case, the parties' briefing, and the relevant law, summary judgment will be GRANTED IN PART and OTHERWISE DENIED.

## II. BACKGROUND

**A.  Factual Background**[1]

Kimberley Morrison-Scalia was the wife of Plaintiff John Scalia. ECF No. 69 ¶ 1. Ms. Scalia was arrested on June 21, 2016, and was detained in the Kern County Central Receiving Facility and Lerdo Pretrial Detention Facility at all times relevant to this case. *Id.* Defendant Rowena Blakely had worked at the Lerdo Pretrial Detention Facility as a registered nurse since 1993. *Id.* ¶ 8. On June 27, 2016, at approximately 11:15 p.m., Deputy Randi Allen was notified that Ms. Scalia had fallen from a top bunk in her cell and had struck her head. *Id.* ¶ 12. Although Ms. Scalia was standing when Deputy Allen arrived at her cell, at some point during the walk to the infirmary Ms. Scalia stated she could not walk anymore, Deputy Allen obtained a wheelchair, and wheeled her to the infirmary. *Id.* ¶¶ 13, 15. Upon arrival to the infirmary, Deputy Allen told Nurse Blakely that Ms. Scalia had fallen off her bunk and hit her head. *Id.* ¶ 16. Ms. Scalia told Nurse Blakely that she fell and hit the left side of her face, left elbow, and left knee. *Id.* ¶ 18. Nurse Blakely took Ms. Scalia's vital signs, noted a small abrasion on Ms. Scalia's left knee, and at Ms. Scalia's request, administered previously prescribed medication. *Id.* ¶¶ 19-22. Nurse Blakely ordered Ms. Scalia to be housed on a lower tier and lower bunk and ordered a follow up visit with a physician to occur on June 30, 2016. *Id.* ¶ 23. Ms. Scalia was taken to a lower tier, low bunk cell. *Id.* ¶ 24. In total, Nurse Blakely's examination lasted several minutes at most, and Nurse Blakely did not perform a formal neurological assessment, did not ask Ms. Scalia why she was in a wheelchair, did not ask Ms. Scalia whether she had been unconscious, did not ask Ms. Scalia to attempt to walk without assistance, and did not call a physician. *Id.* ¶¶ 17, 20.

Several hours later, at approximately 2:30 a.m. on June 28, 2016, Nurse Blakely was called for

---

[1] The parties have significant disagreements as to which facts are established and which facts remain disputed. *See* ECF Nos. 67-7, 69, 73-1. Plaintiff and Defendants also lodged numerous objections to evidence submitted by the other party. *See id.* The Court has reviewed the parties' factual disputes, and objections and responses thereto, and finds that the following facts are undisputed or not credibly disputed. Further, the Court has reviewed the objections (and the responses) to the evidence necessary to the Court's order and finds the objections meritless.

medical priority regarding Ms. Scalia, and was informed by Deputy Allen that, after receiving an emergency intercom message from Ms. Scalia's cellmate, the deputy found Ms. Scalia on the floor, unconscious. *Id.* ¶¶ 25-26, 28. Deputy Allen observed Ms. Scalia was unconscious, non-responsive, mumbling, and pale, and found her on the ground near the toilet, with vomit all over the toilet and on Ms. Scalia, and her hands and feet curled in. *Id.* ¶¶ 27-28. Ms. Scalia was assisted up on a gurney and taken to the infirmary. *Id.* ¶ 29. Nurse Blakely took Ms. Scalia's vitals and noted a small bump to Ms. Scalia's left eyebrow. *Id.* ¶ 34. There is a genuine dispute whether Ms. Scalia fell from her bunk a second time. *See, e.g.*, *Id.* ¶¶ 34-35. Based on her 2:30 a.m. assessment, Nurse Blakely filled out a referral form to send Ms. Scalia to Kern Medical Center Emergency Room. *Id.* ¶ 36. Nurse Blakely's referral did not state Ms. Scalia had hit her head, that Ms. Scalia could not walk during the initial exam, nor that Ms. Scalia was unconscious and non-responsive during the second exam. *Id.* ¶ 36.

The ambulance driver documented that Ms. Scalia was mentally confused and spoke in a nonsensical manner. ECF No. 73-1 ¶ 129. The ambulance arrived at the Kern County Medical Center at 3:34 a.m. on June 28, 2016. ECF No. 69 ¶ 39. Ms. Scalia was initially examined by an E.R. nurse and then an E.R. physician, who found Ms. Scalia alert, responsive, and with gross motor function and sensation intact. *Id.* ¶ 40. However, around 4:54 a.m. Ms. Scalia became incontinent, and the doctor ordered a CT Scan for Ms. Scalia. *Id.* ¶ 42. At approximately 5:52 a.m., the CT scan showed "large acute left hemispheric subdural hematoma with significant mass effect and subfalcine herniation to the right and likely early changes of transtentorial herniation with mild mass effect on the brainstem." *Id.* ¶ 44. At approximately 8:20 a.m., Ms. Scalia was taken to the operating room for surgery. *Id.* ¶ 45. However, Ms. Scalia never recovered, was placed on comfort measures by her family on June 30, 2017, and Ms. Scalia was pronounced dead at 12:05 a.m. on July 1, 2016. *Id.* ¶ 46. An autopsy determined that Ms. Scalia died from blunt injury to the head. *Id.* ¶ 48. There is a factual dispute whether Ms. Scalia's cirrhosis or alcoholism complicated the head trauma. *See, e.g., id.* ¶ 49. There is also a factual dispute regarding whether Ms. Scalia would have survived had surgery been performed earlier.

*Id.* ¶ 84.

Defendants County of Kern and KCHA are public entities. *Id.* ¶ 2. Defendant County of Kern operates the Lerdo Pretrial Detention Facility. ECF No. 69 ¶ 3. The employment of the Lerdo Pretrial Detention Facility infirmary nursing staff, including Nurse Blakely, was transitioned from the County of Kern to KCHA on July 1, 2016. *See* ECF No. 69 ¶ 9.

**B.      Procedural Background**

Plaintiff filed this lawsuit on June 17, 2016, in Fresno County Superior Court. ECF No. 1, Exs. A & B. Defendants timely removed to this Court on August 19, 2017. ECF No. 1. Defendants moved for summary judgment on July 2, 2019. ECF No. 67. Plaintiff filed his opposition on July 30, 2019. ECF Nos. 69-72.[2] Defendants filed their reply on August 6, 2019. ECF No. 73. Pursuant to Local Rule 230(g), the Court determined that this matter was suitable for decision on the papers and took it under submission on August 7, 2019. ECF No. 74.

## III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods.,*

---

[2] Plaintiff's Statement of Genuine Issues of Material Fact ends with a seven-page "Memorandum of Points and Authorities on Spoliation of Video Evidence." ECF No. 69 at 77-84. Plaintiff argues that KCHA should be sanctioned for its failure to maintain video surveillance recordings at the jail infirmary. *Id.* The Court is not obligated to consider Plaintiff's request that does not comply with the federal or local motion practice rules. And the Court agrees with Defendants that there is no evidence KCHA had possession or control over the videotapes, or otherwise committed spoliation of the tapes. The County of Kern appears to be the sole party responsible for the videotapes, but Plaintiff does not seek sanctions against the County of Kern. Nevertheless, the Court is concerned that potentially relevant evidence was destroyed, intentionally or otherwise, despite a timely preservation request. Therefore, Plaintiff's request for sanctions is **DENIED without prejudice**. Plaintiff may renew his request for sanctions in a properly noticed motion.

4

*Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

## IV. DISCUSSION

Defendants argue that: (1) Plaintiff's First and Second Causes of Action against Nurse Blakely and KCHA pursuant to § 1983 fail because Defendants are entitled to qualified immunity; (2) Plaintiff's Second Cause of Action against KCHA fails because there is no evidence of a custom, practice, or policy of KCHA that caused Ms. Scalia's injuries; (3) Plaintiff's Bane Act claim fails because Nurse Blakely did not act with the requisite intent; (4) Plaintiff's Fourth Cause of Action against KCHA pursuant to Cal. Gov. Code § 845.6 fails because medical care was summoned and KCHA is statutorily immune; (5) Plaintiff's Sixth Cause of Action against KCHA for professional negligence fails because KCHA is statutorily immune; (6) Plaintiff's punitive damage claim fails because Nurse Blakely did not act with malice, oppression or intent to injure; (7) John Scalia, individually, lacks standing to sue on each cause of action except the Sixth Cause of Action for Professional Negligence. Plaintiff opposes

most of these arguments.

**A.      Qualified Immunity on § 1983 Deliberate Indifference Claim**

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Qualified immunity is an affirmative defense to a § 1983 claim that "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223 (2009). The doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Further, it "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*

To determine whether officers are entitled to qualified immunity, a court conducts a two-step inquiry. "The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231. To be a clearly established constitutional right, a right must be sufficiently

clear "that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation and internal quotation marks omitted). "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 20. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (Jan. 7, 2019).

Consequently, at summary judgment, an officer may be denied qualified immunity in a § 1983 action "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). In making this determination, the Court still must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650 (2014). The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). But, "[w]here disputed facts exist, [a court] determines if the denial of qualified immunity was proper by assuming that the version of events offered by the non-moving party is correct." *Wilkins*, 350 F.3d at 951.

As described below, taking all the evidence in the light most favorable to Plaintiff, a reasonable jury could find Defendants were deliberately indifferent to Ms. Scalia's constitutional right to adequate medical care. Moreover, this right was clearly established at the time of the incident such that a reasonable person would understand the failure to provide medical assistance to Ms. Scalia was unlawful.

A § 1983 action premised on a violation of the Fourteenth Amendment for inadequate medical care requires allegations that each defendant acted with deliberate indifference to the decedent's serious medical needs. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc). Inmates bringing deliberate indifference claims against prison officials "may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Id.* at 1067-68; *see also Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."). Under either clause, a plaintiff must show that the prison officials acted with "deliberate indifference." *Id.* at 1068.

The Court noted in its ruling on Defendants' motion to dismiss that following the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and the Ninth Circuit's decision in *Castro*, 833 F.3d 1060, the applicable standard for a pretrial detainee's claim of deliberate indifference to a serious medical need was less clear, but that an objective standard likely applied. *See* ECF No. 28 at 5. The Ninth Circuit has since confirmed in *Gordon v. County of Orange* that a pretrial detainee's claim for medical deliberate indifference is subject to a solely objective standard. 888 F.3d 1118, 1124-25. The Ninth Circuit held that deliberate indifference to a pretrial detainee's untreated medical conditions requires a plaintiff to demonstrate:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;
> (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125; *see also* Ninth Circuit Model Civil Jury Instructions No. 9.30 (2019) (providing same test as

above but replacing "conditions under which the plaintiff was confined" with the phrase "the denial of needed medical care"). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Gordon*, 888 F.3d at 1124-25 (quoting *Castro*, 833 F.3d at 1071) (internal quotation marks and citations omitted). "The 'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (quoting Castro, 833 F.3d at 1071) (internal quotation marks and citations omitted). As before, "[a]n *inadvertent* failure to provide adequate medical care does not, by itself, state a deliberate indifference claim for § 1983 purposes." *Wilhelm*, 680 F.3d at 1122 (emphasis in original) (quotation marks omitted). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F. 3d. at 1125 (quoting *Castro*, 833 F.3d at 1071).

Here, viewing the evidence in the light most favorable to Plaintiff, there are genuine disputes of material fact and a reasonable jury could find Defendants were deliberately indifferent to Ms. Scalia's medical needs.

First, it is undisputed that Nurse Blakely made numerous intentional decisions with respect to the denial of Ms. Scalia's medical care, most critically the decision to return Ms. Scalia to a cell after the first examination, despite knowing that Ms. Scalia had fallen from the top bunk and suffered a head injury from hitting the concrete floor. *See* ECF No. 69 ¶ 23; ECF No. 73-1 ¶¶ 111, 131. There are also factual disputes regarding Nurse Blakely's intentional decisions to not act during both of her examinations, such as deciding to not call a physician nor perform a formal neurological assessment. *See* ECF No. 69 ¶¶ 17, 20; ECF No. 73-1 ¶¶ 113, 126-128, 130, 132-39, 147-53.

Second, there are genuine material factual disputes regarding whether the alleged denial of needed medical care put plaintiff at substantial risk of suffering serious harm. Ultimately, Plaintiff provides evidence that that Ms. Scalia suffered serious head trauma, that Nurse Blakely's intentional decisions delayed treatment and exacerbated the injury, and that earlier detection and treatment of the

9

head injury would have saved Ms. Scalia's life. *See* ECF No. 69 ¶¶ 44, 84; ECF No. 73-1 ¶¶ 113, 131, 139, 147-53.

Third, at a minimum, there are genuine material factual disputes regarding whether Nurse Blakely did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of her conduct obvious. Ms. Scalia fell from about five feet onto bare concrete, hitting her head against the concrete. *See* ECF No. 69 ¶ 12. Ms. Scalia was transported to the infirmary by wheelchair because she was unable to walk on her own, which Nurse Blakely observed. *See id.* ¶¶ 13, 15. But Nurse Blakely's first examination lasted several minutes at most, and Nurse Blakely did not perform a formal neurological assessment, did not ask Ms. Scalia why she was in a wheelchair, did not ask Ms. Scalia whether she had been unconscious, did not ask Ms. Scalia to attempt to walk without assistance, did not keep Ms. Scalia in the infirmary for observation, and did not call a physician at any time. *See* ECF No. 69 ¶¶ 17, 20; ECF No. 73-1 ¶¶ 113, 130-31, 133-34, 139. Even after the second examination when Ms. Scalia's symptoms were far more severe, Nurse Blakely did not call a physician, and her referral to the hospital did not state Ms. Scalia had hit her head, that Ms. Scalia could not walk during the initial exam, nor that Ms. Scalia was unconscious and non-responsive during the second exam. *See* ECF No. 69 ¶ 36; ECF No. 73-1 ¶¶ 127-28, 130, 135-39. It is undisputed that Nurse Blakely failed to take these reasonable, available measures to abate the risk of serious harm, and there is a genuine dispute of material fact whether a reasonable nurse would have appreciated the high degree of risk involved, making the consequences of such conduct obvious. *See also* ECF No. 73-1 ¶¶ 147-53. There is enough evidence for the jury to decide that a reasonable nurse would have responded with more urgency and more careful testing of Ms. Scalia's condition given the obviously high risk of severe consequences from a possible traumatic head injury, and that Nurse Blakely's actions were objectively unreasonable and reckless.

Finally, as mentioned, there is a genuine dispute as to whether earlier detection and treatment

10

would have saved Ms. Scalia's life, and thus a genuine dispute as to whether Nurse Blakely's failure to take additional measures caused Ms. Scalia's injuries. *See* ECF No. 69 ¶¶ 44, 84; ECF No. 73-1 ¶¶ 113, 130-39, 147-53.

Thus, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Nurse Blakely was deliberately indifferent to Ms. Scalia's serious medical need. Moreover, this right was clearly established at the time of the incident such that a reasonable nurse would have understood her conduct to be unlawful in that situation. *See, e.g.*, *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) ("Because the nurses and Dr. Reid knew of Ortiz's head injury but disregarded evidence of complications to which they had been specifically alerted and, without an examination, prescribed sedatives that were contraindicated, we cannot say as a matter of law they were not deliberately indifferent to Ortiz's medical needs."); *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) ("[I]t is "clearly established that the officers [may] not intentionally deny or delay access to medical care" to pretrial detainees."); *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). Defendants are not entitled to qualified immunity at this time.

**B.**     *Monell* **Claim**

Defendant argues that the *Monell* claim against KCHA should be dismissed because there is no evidence of a KCHA custom, practice, or policy, that caused Ms. Scalia's injuries. A municipality cannot be held liable under § 1983 for the actions of its employees under the theory of *respondeat superior*. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015). A municipality can only be held liable for injuries caused by the execution of its policy or custom whether made "by its lawmakers or those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Municipal liability under *Monell* may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local

11

government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). "A policy can be one of action or inaction," *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006), and can be formal or informal. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988).

A longstanding practice or custom is one that is so "persistent and widespread" that it constitutes a "permanent and well settled" governmental policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* The line between "isolated or sporadic incidents" and "persistent and widespread conduct" is not clearly delineated, although where more than a few incidents are alleged, the determination appears to require a fully-developed factual record. *Compare Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989) (single incident of excessive force inadequate to establish liability), *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents insufficient), *with Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (triable issue of fact existed as to whether Seattle had an unconstitutional policy or custom of suppressing certain political speech based on the testimony of several individuals that their entry to a particular area was permitted by police only after they removed offending buttons and stickers, coupled with the testimony of the officer in charge that the City would not permit "demonstrations" in the area); *see also Jarbo v. County of Orange*, 2010 WL 3584440, *9-*13 (C.D. Cal. Aug. 30, 2010) (reviewing circumstances in which *Monell* custom/practice claims were permitted past summary judgment).

Thus, generally, a plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to

deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citations omitted); *Mabe v. San Bernardino County*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). The standard for deliberate indifference for a governmental entity is an objective one. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).

It is undisputed that, during the events leading to Ms. Scalia's death, the County of Kern employed the infirmary nursing staff. ECF No. 69 ¶¶ 2-3, 9. Ms. Scalia died at 12:05 a.m. on July 1, 2016. ECF No. 69 ¶ 46. KCHA did not take over the infirmary and become the employer of the nursing staff until July 1, 2016. ECF No. 69 ¶ 9. Simply put, a custom, policy, or practice of KCHA could not have been the "moving force" behind Plaintiff's injury when KCHA was not the employer or supervisor of Nurse Blakely on June 27-28, 2016, the dates when the relevant acts and omissions culminated in Ms. Scalia's death. Plaintiff argues that KCHA's failure to follow its required procedures to investigate Ms. Scalia's death is sufficient to bring this claim to trial, or that at the very least the failure demonstrates implicit ratification of Nurse Blakely's actions. However, Plaintiff does not show how these failures to follow policy caused or contributed to Ms. Scalia's constitutional deprivation, and it remains unclear how KCHA could "ratify" Nurse Blakely's actions prior to KCHA becoming her employer. The only policies, practices, or customs that appear relevant to Ms. Scalia's death are those of the County of Kern. Plaintiff does not tie the KCHA policies to the those of the County of Kern. Plaintiff's cases cited for the proposition that post-event evidence is relevant to whether a policy or ratification existed at the time of injury are distinguishable because in those cases the post-event evidence related to defendants who were responsible at the time of the injury. *See McRorie v. Shimoda*, 795 F.2d 780, 782, 784 (9th Cir. 1986) (prison officials who failed to reprimand guards post-event were responsible for supervision at time of injury); *Henry v. County of Shasta*, 132 F.3d 512, 518-21 (9th Cir. 1997), *opinion amended on denial of reh'g,* 137 F.3d 1372 (9th Cir. 1998) (post-event evidence related to municipal defendant who was responsible at time of injury).

13

Therefore, Plaintiff fails to raise a genuine dispute of material fact as to how KCHA's policies or ratification were a moving force behind Ms. Scalia's injury and summary judgment as to Plaintiff's Second Cause of Action for *Monell* § 1983 liability will be **GRANTED** as to KCHA.

C.      **Bane Act Violation**

Plaintiff's Third Cause of Action arises under California Civil Code § 52.1 (the "Bane Act"). The Bane Act authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion. *See* Cal. Civ. Code § 52.1(a) (proscribing interference "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . ."); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998) (interpreting the Bane Act's use of "interferes" to mean "violates"). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007); *see also Doe v. State*, 8 Cal. App. 5th 832, 842, (2017), *review denied* (June 14, 2017) ("To prevail on a cause of action under Civil Code section 52.1, the plaintiff must show that the defendant interfered with or attempted to interfere with the plaintiff's legal right by threatening or committing violent acts."). A plaintiff bringing a claim pursuant to the Bane Act "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015).

As discussed in the Court's Order on the motion to dismiss, "[t]he Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or coercion has been the source of

14

much debate and confusion." *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801 (2017), *as modified* (Nov. 17, 2017), *review denied* (Feb. 28, 2018) (alterations and quotation marks omitted). The *Cornell* court ultimately concluded that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." *Id*. at 801-02. *Cornell* explained that the test

> essentially sets forth two requirements for a finding of "specific intent" . . . . The first is a purely legal determination. Is the . . . right at issue clearly delineated and plainly applicable under the circumstances of the case? If the trial judge concludes that it is, then the jury must make the second, factual, determination. Did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that . . . right? If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—i.e.,"in reckless disregard of constitutional [or statutory] prohibitions or guarantees."

*Id*. at 803 (internal citations and quotation marks omitted); *see also Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (adopting *Cornell*'s specific intent standard).

Applying the intent test laid out in *Cornell*, the Court finds that summary judgment is not appropriate as to Plaintiff's Bane Act Claim. First, the right at issue, a pretrial detainee's right to be free from deliberate indifference to serious medical needs, is "clearly delineated and plainly applicable" to the circumstances. *Cornell*, 17 Cal. App. 5th at 803. Second, as found above, there is at least a genuine dispute of material fact as to whether Nurse Blakely acted with deliberate indifference to Ms. Scalia's medical needs. Thus, similarly, there is a genuine dispute of material fact as to whether Nurse Blakely acted with reckless disregard for Ms. Scalia's rights which is all that is necessary to demonstrate specific intent under the Bane Act. Therefore, Defendants' request for summary judgment as to the Bane Act claim is **DENIED**.

### D. Punitive Damages

Defendants seek summary judgment of Plaintiff's prayer for relief for punitive damages. It is "well-established that that a 'jury may award punitive damages under section 1983 either when a

defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993)). "The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases," and "malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages." *Id*. (citing *Smith v. Wade*, 461 U.S. 30, 34 (1983)).

Here, as discussed above, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's constitutional rights, which requires a showing of "something akin to reckless disregard," *Castro*, 833 F.3d at 1071, and the standard for the availability of punitive damages in a § 1983 action includes "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves *reckless* or callous *indifference to the federally protected rights* of others," *Dang*, 422 F.3d at 807 (emphasis added). Therefore, summary judgment is **DENIED** as to Plaintiff's punitive damages claim.

### E. Unopposed Arguments

Finally, Defendants make a number of arguments for summary judgment which Plaintiff explicitly states he does not oppose, or which Plaintiff fails to substantively oppose in his brief.

First, Defendants argue the Court dismissed the Fourth Cause of Action pursuant to Cal. Gov. Code § 845.6 as to both KCHA and Nurse Blakely in its ruling on Defendants' motion to dismiss, and Plaintiff did not amend this cause of action. ECF No. 69 ¶ 5. Defendants point to language in the Court's order granting dismissal for "Defendants[]" as ambiguous as to whether this included dismissal for KCHA, *see* ECF No. 67 at 28-29, ECF No. 28 at 27, and Defendants note that Plaintiff has not signed a stipulation that the Fourth Cause of Action is dismissed. Nevertheless, Plaintiff appears to concede that, if the claim was not dismissed, summary adjudication would be appropriate. *See* ECF No. 72 at 2, 31. Thus, the parties do not dispute that the Court dismissed the Fourth Cause of Action against KCHA, the Court agrees the Fourth Cause of Action was dismissed as to KCHA in the April 10, 2018

Order, and a grant of summary adjudication is unnecessary.

Second, Defendants argue that KCHA is entitled to Cal. Gov Code §§ 844.6 and 845.6 immunity as to the Third, Fourth, and Sixth Causes of Action. Plaintiff's opposition concedes that § 844.6 immunity is appropriate, stating that "defendants' Motion for Summary Adjudication should be denied in its entirety, *except as to KCHA's immunity under Gov. Code § 844.6*." ECF No. 72 at 2, 31 (emphasis added). Therefore, summary judgment will be granted as to KCHA on the Third and Sixth Causes of action (as the Court has determined the Fourth Cause of Action was previously dismissed).

Third, Defendants argue that John Scalia cannot bring the First through Fifth Causes of Action in his individual capacity because he is not the pre-trial detainee whose rights are at issue, and he may only bring them as a successor-in-interest. *See* ECF No. 69 ¶ 88. Plaintiff does not dispute this argument. Therefore, the Court will grant summary judgment in favor of Defendants on Mr. Scalia's Causes of Action One, Two, Three, Four, and Five brought in his individual capacity. These Causes of Action survive to the extent they are brought in Mr. Scalia's capacity as Ms. Scalia's successor-in-interest.

Therefore, summary judgment is **GRANTED** for KCHA as to the Third and Fifth Causes of Action. Summary judgment is **GRANTED** for all Defendants as to the First, Second, Third, Fourth, and Fifth Causes of Action brought by Mr. Scalia in his individual capacity only.

## V. CONCLUSION AND ORDER

For the reasons stated above, Defendants' summary judgment is **GRANTED** in part and **OTHERWISE DENIED**.

IT IS SO ORDERED.

Dated: **September 6, 2019**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE