UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SCALIA, individually and as successor-in-interest of Decedent KIMBERLY MORRISSEY-SCALIA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF KERN, et al.,<br><br>Defendants. | No. 1:17-cv-01097-NONE-JLT<br><br>ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART THE FINDINGS AND RECOMMENDATIONS REGARDING SPOLIATION SANCTIONS<br><br>(Doc. No. 100) |

Kimberly Morrissey-Scalia ("decedent") fell from her bunk bed while housed in the Lerdo Pre-Trial Facility in Bakersfield, California on June 27, 2016.  (Doc. No. 15 at 10–12.)  After seeing defendant Nurse Rowena Blakely ("defendant Nurse Blakely") at the infirmary, decedent returned to a different cell and again fell.  Decedent subsequently lost consciousness and was transported to the Kern Medical Emergency Room, where she underwent an emergency craniotomy and subsequently passed away on July 1, 2016.  (Doc. No. 15 at 16–18.)  Plaintiff, decedent's husband, filed this action against several defendants that allegedly contributed to decedent's death.  Following stipulations of the parties and various motions, the only remaining defendants in this action are defendant Nurse Blakely, the County of Kern ("Defendant County"), and Kern County Hospital Authority ("KCHA"), which is a public entity and/or agency of defendant County.

1

In the instant motion, plaintiff alleges that defendants improperly spoliated evidence—video recordings of decedent the night of her death—and should therefore be subject to the imposition of sanctions. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The assigned magistrate judge recommended on October 8, 2020 that plaintiff's request for sanctions be denied. (Doc. No. 100.) Plaintiff was provided an opportunity to file objections to the findings and recommendations and did so on November 11, 2020. (Doc. No. 104.) In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C), this court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, the court adopts the findings in recommendations in part and declines to adopt them in part.

Less than one month after decedent fell out of her bunk, plaintiff issued detailed evidence preservation demand letters to defendants County and KCHA. These letters specifically referenced the need to secure and preserve all video footage depicting decedent in the jail. The letters also made clear that litigation regarding the circumstances surrounding decedent's death was forthcoming. (*See*, *e.g.*, Doc. Nos. 86-7–86-11.) Plaintiff later served Requests for Production of Documents on all defendants, including the County, which requested production of any video recordings of decedent during the incident that preceded her death. (Doc. No. 91 at 25.) Throughout the discovery process, defendant County represented that no video of the decedent on the night in question had ever existed, and that no evidence suggested otherwise; however, from April to June 2019, deponents revealed for the first time that Lerdo did have video cameras that likely captured relevant evidence, that footage captured by these cameras was stored for 13 months before being overwritten, and that defendant County may have failed to make an effort to retrieve and preserve this video footage of decedent prior to it being recorded over. (*See*, *e.g.*, Doc. Nos. 86-20, 86-13, and 93-4.) Defendants agree that plaintiff was not aware of all facts necessary and relevant to support his spoliation of evidence claims until May 16, 2019. (Doc. No. 107 at 4.)

Plaintiff raised this issue with the court shortly thereafter and the judge previously assigned to this case, District Judge Lawrence J. O'Neill, granted plaintiff leave to file a properly

noticed motion for imposition of sanctions based on the allegations that the defendants had despoiled video evidence by failing to preserve it, (Doc. No. 75 at 4, n.2.) Plaintiff timely filed the instant motion only six weeks later. (Doc. No. 86.)[1]

A party has a duty to preserve documents or things in its possession, custody or control if it has some notice that the documents or things are potentially relevant to existing or reasonably anticipated litigation. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002). This duty can be triggered before litigation formally commences, so long as the party should reasonably know that evidence may be relevant to anticipated litigation. The pending findings and recommendations properly conclude that defendants KCHA and Nurse Blakely should not be subject to sanctions for despoiling any video recording taken in Lerdo because neither party had possession or control over the missing evidence.

The findings and recommendations also properly found that defendant County, by its own admission, had a duty to preserve any video footage that existed at the time plaintiff first sent preservation letters on July 22, 2016. (Doc. No. 100 at 18.) However, defendant County has not presented any evidence whatsoever suggesting that it complied with that duty. After plaintiff discovered that relevant video evidence may have existed and been despoiled, defendant County merely vaguely asserted that its video storage system "sometimes" encountered problems which resulted in "missing videos" in the years prior to decedent's death. Defendant County has not

---

[1] As noted in the pending findings and recommendations, spoliation sanctions may be denied where the complaining party fails to raise the issue of spoliation sanctions in a reasonable amount of time. For example, sanctions have been denied on timeliness grounds where petitioners waited 9–12 months between learning of the potential spoliation of evidence and the seeking of imposition of appropriate sanctions. *See Cottle-Banks v. Cox Comm's, Inc.*, 2013 WL 224433 at *16 (S.D. Cal. May 21, 2013); *see also Olson v. Shawnee Cty. Bd. Of Comm'rs.*, 7 F.Supp.3d 1162, 1200 (D. Kan. 2014). These precedents are inapplicable here, where plaintiff's delay in seeking the imposition of sanctions amounted to only a few weeks. The court notes that the county asserts that plaintiff was untimely in filing this motion based upon the county's contention that plaintiff has been aware of the lack of video footage since October 2018. The county's contention in this regard, however, is without merit. It is clear to the undersigned that plaintiff's counsel did not discover the reason for the absence of any video footage—the County's complete failure to take any steps to preserve the evidence—until receiving additional information from the County during discovery and conducting related depositions from April through of June 2019. Plaintiff's counsel could not have alleged spoliation of evidence in October 2018 based merely on the County's bare assertion that video footage of the incident did not exist.

asserted that these claimed occasional technological failures affected the video recording of decedent the night of her fall, possibly because—according to the deposed representatives of defendant County—the County *did not even check for or in any way attempt to preserve* relevant video recordings until more than thirteen months after the incident at issue in this case. (Doc. Nos. 93-2 at 18; 86-13 at 13.)

Defendant County asserts that imposition of sanctions are inappropriate here because plaintiff has not demonstrated that the relevant video was actually recorded and properly saved on defendant County's servers before it was overwritten. The placing of such a burden on plaintiff is not supported by Ninth Circuit case law and, under the circumstances presented here, the County may not rely upon the suggestion that video evidence—had it been properly preserved—may not have included a recording of plaintiff or may have turned out to be irrelevant to her claim as a defense to the imposition of sanctions for spoliation of evidence. *See Leon*, 464 F.3d at 959 (finding that the despoiling party cannot assert a presumption of irrelevance as to destroyed evidence).

Even if the undersigned were persuaded by those out of circuit district court decisions that have articulated a requirement that the party asserting the spoliation of evidence must make a showing of the "existence of the evidence," plaintiff here has adequately alleged "some facts" indicating that relevant video of the decedent existed before it was overwritten in 2017 due to the defendant County's failure to take any preservation measures. *See*, *e.g.*, *Epstein v. Toys-R-Us Del., Inc.*, 277 F. Supp. 2d 1266, 1277 (S.D. Fla. 2003) ("In order to prevail on a claim for the destruction of a videotape, Plaintiff must at a minimum point to some facts indicating that such a video exists") (emphasis omitted). Specifically, plaintiff has demonstrated that, absent a specific failure[2], the video cameras in the Lerdo facility would have captured defendant Nurse Blakely and the decedent in the infirmary during decedent's examination on the night of her falls; that the video footage of the examination would have been saved to servers in the control of the defendant County; and that the footage would have remained on the servers for thirteen months before being

---

[2] The defendant County has identified no such specific failure.

4

overwritten no earlier than July of 2017.

Where, as here, the defendant comes forward with no explanation as to why it did not attempt to preserve the surveillance video of decedent on the night in question, only one reasonable conclusion that can be drawn. The conclusion reached by one district court under similar circumstances is instructive here:

> In this case, Defendant has not provided any explanation as to why it did not preserve the surveillance video of the main dealer's room on November 28, 2013 pursuant to Plaintiff's timely request. The Court must therefore conclude that Defendant simply ignored Plaintiff's request that the video be preserved. An adverse jury instruction should be given that the video recording of that incident, if produced, would be favorable to the Plaintiff's allegation that someone searched his backpack. Plaintiff did not specifically request Defendant to preserve surveillance video of the December 11, 2013 incident, although Defendant had a duty to investigate and should have preserved video of the incident if it existed. With respect to this incident, the instruction given by the court in *Pettit v. Smith*, 45 F.Supp.3d at 1114 is appropriate. The jurors should be instructed that Defendant had a duty to preserve the video if it existed and that they may, but are not required to, infer that the video recording would have been favorable to the Plaintiff.

*Magdaluyo v. MGM Grand Hotel, LLC*, No. 2:14-cv-01806-RFB-GWF, 2016 WL 614397 at *5 (D. Nev. Feb. 16, 2016). The despoiling party's motive or degree of willfulness or fault in the spoliation guides the severity of the sanctions to be imposed. *Advantacare Health Partners, supra, citing Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993); *Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991). Available sanctions may include instructing the jury regarding the spoliation, drawing inferences adverse to the despoiling party regarding the destroyed evidence, and ordering the despoiling party to pay fees and costs associated with plaintiff's efforts to obtain information about the lost evidence and the sanctions motion itself. *See Unigard Security Ins. Co. v. Lakewood*, 982 F.2d 363, 368–70 (9th Cir.1992). The parties have not briefed in detail the issue of what sanction(s) may be appropriate under the circumstances. Therefore, further proceedings addressing this issue are required.

/////

/////

/////

Accordingly,

1. The findings and recommendations issued on October 8, 2020, (Doc. No. 100), are adopted in part;
2. Spoliation sanctions are denied as to all defendants other than defendant the County of Kern; and
3. The parties are directed to meet and confer to establish a mutually convenient schedule for further briefing on the issue of sanctions. Within thirty days of the date of this order, the parties shall either file a stipulation setting forth that schedule or a joint status report setting forth their respective positions.

IT IS SO ORDERED.

Dated:   **December 21, 2021**

UNITED STATES DISTRICT JUDGE