UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN SCALIA, individually and as successor-in-interest of Decedent KIMBERLY MORRISSEY-SCALIA,**<br><br>Plaintiff,<br><br>v.<br><br>**COUNTY OF KERN, et al.,**<br><br>**Defendants** | CASE NO. 1:17-cv-01097-AWI-CDB<br><br>**ORDER ON PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**<br><br>(Doc. Nos. 86, 145) |

This case arises from the death of Kimberly Morrissey-Scalia ("Decedent"), who died during her pretrial detainment at Kern County Jail. Plaintiff John Scalia, Decedent's husband, brings claims individually and on behalf of Decedent's estate pursuant to 42 U.S.C. § 1983 and state law. Pending before the Court is Plaintiff's motion for spoliation sanctions. Doc. Nos. 86 & 145. Having carefully considered the record in this case, the Court will grant in part Plaintiff's motion and order the parties to submit additional briefing as discussed in greater detail below.

## **BACKGROUND**

Decedent fell from her bunk bed while housed in the Lerdo Pre-Trial Facility in Bakersfield, California on June 27, 2016. Doc. No. 15 at 10-12. After seeing Defendant Nurse Rowena Blakely at the infirmary, Decedent returned to a different cell and again fell. Decedent subsequently lost consciousness and was transported to the Kern Medical Emergency Room, where she underwent an emergency craniotomy and subsequently passed away on July 1, 2016. Doc. No. 15 at 16-18. Plaintiff John Scalia filed this action against several defendants, asserting

1  the following causes of action: (1) deprivation of rights under the Fourth and Fourteenth
2  amendments to the U.S. Constitution, (2) municipal and supervisor liability, (3) violation of civil
3  rights under Cal. Civ. Code § 52.1(b), (4) failure to summon medical care in violation of Cal.
4  Gov't Code § 845.6, (5) negligence and premises liability, and (6) medical negligence.  Doc. No.
5  15 at 30-43.  Following stipulations of the parties and various motions, the only claims remaining
6  are the First, Third, and Sixth Causes of Action against Blakely; and the Second, Third, and Sixth
7  Causes of Action against Defendant County of Kern ("County") "arising out of its ownership of
8  Kern Medical Center."  See Doc. Nos. 28, 53-54, 58-59, 63-64, 75.

9        On October 22, 2019, Plaintiff filed a motion for spoliation sanctions on the ground that
10 Defendants spoliated video evidence of Decedent's interactions with Blakely after Decedent fell
11 from her bed.  Doc. No. 86.  The Magistrate Judge issued findings and recommendations
12 regarding Plaintiff's motion, Doc. No. 100, and District Judge Dale A. Drozd adopted those
13 findings in part.  Doc. No. 111.  Specifically, Judge Drozd adopted the findings that (1) Blakely
14 and KCHA should not be subject to sanctions for despoiling any video recordings taken in Lerdo
15 because neither party had possession or control over the missing evidence, and (2) the County had
16 a duty to preserve any video footage that existed at the time Plaintiff first sent preservation letters
17 on July 22, 2016.  Id. at 3.  Judge Drozd further found that the County had "not presented any
18 evidence whatsoever suggesting that it complied with that duty," id., and that placing the burden
19 on Plaintiff to demonstrate that the relevant video was actually recorded and properly saved on the
20 County's servers before it was overwritten "is not supported by Ninth Circuit case law."  Id. at 3-
21 4.  Even if Plaintiff was required to satisfy such a burden, Judge Drozd found that Plaintiff
22 adequately alleged "some facts" indicating that relevant video of Decedent existed before it was
23 overwritten.  Id. at 4.  Specifically, Judge Drozd found that Plaintiff "demonstrated that, absent a
24 specific failure,[1] the video cameras in the Lerdo facility would have captured defendant Nurse
25 Blakely and the decedent in the infirmary during decedent's examination on the night of her falls;
26 that the video footage of the examination would have been saved to servers in the control of the
27 defendant County; and that the footage would have remained on the servers for thirteen months
28

---
[1] Judge Drozd noted that the County had not identified such a specific failure.  Id. at 4 n.2.

1 before being overwritten no earlier than July of 2017." Id. at 4-5. Furthermore, Judge Drozd

2 found that "[w]here, as here, the defendant comes forward with no explanation as to why it did not

3 attempt to preserve the surveillance video of decedent on the night in question, only one

4 reasonable conclusion that can be drawn[:] . . . 'Defendant simply ignored Plaintiff's request that

5 the video be preserved.'" Id. at 5 (quoting Magdaluyo v. MGM Grand Hotel, LLC, 2016 WL

6 614397, at *5 (D. Nev. Feb. 16, 2016)).[2]

7     Because the parties did not brief in detail the issue of what sanction(s) may be appropriate

8 under the circumstances, Judge Drozd ordered the parties to file supplemental briefing addressing

9 this issue. Id. at 6. The parties thereafter submitted briefing regarding what sanctions should be

10 imposed on the County for spoliating the video evidence. See Doc. Nos. 145, 146, 147, 148, 149,

11 155.[3]

12 **LEGAL STANDARD**

13     "A federal trial court has the inherent discretionary power to make appropriate evidentiary

14 rulings in response to the destruction or spoliation of relevant evidence." Medical Lab. Mgmt.

15 Consultants v. ABC, 306 F.3d 806, 824 (9th Cir. 2002); Glover v. BIC Corp., 6 F.3d 1318, 1329

16 (9th Cir. 1993). Sanctions for spoliation of evidence may be imposed under the court's inherent

17 powers to manage its own affairs. Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006).

18 Courts also have authority to sanction a party pursuant to Rule 37 for failure to make disclosures

19 or to cooperate in discovery. See Fed. R. Civ. Pro. 37. Among the sanctions available to a court

20 are default or dismissal of claims or defenses, preclusion of evidence, an adverse inference

21 instruction, and monetary sanctions. See Leon, 464 F.3d at 958-59; Glover, 6 F.3d at 1329; In re

22 Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006); see also Caruso v.

23 Solorio, 2021 U.S. Dist. LEXIS 150231, *28 (E.D. Cal. Aug. 9, 2021). To decide which specific

24 spoliation sanction to impose, courts generally consider three factors: (1) the degree of fault of the

25 party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing

26

27 [2] Judge Drozd also found that Plaintiff's motion for spoliation sanctions was not untimely because "plaintiff's delay in seeking the imposition of sanctions amounted to only a few weeks." Id. at 3 n.1.

28 [3] This case has since been reassigned to the undersigned. See Doc. Nos. 113, 153.

party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. See Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013) (citing Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012)); see also Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co., 265 F.R.D. 510, 533 (E.D. Cal. 2010). The sanction should be designed to (1) deter parties from destroying evidence; (2) place the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restore the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation. See Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015); Apple, 888 F. Supp. 2d at 992 n.10; Reinsdorf, 296 F.R.D. at 626. Sanctions under the court's "inherent powers must be exercised with restraint" and should be appropriate to the conduct that triggered the sanction. America Unites for Kids v. Rousseau, 985 F.3d 1075, 1088 (9th Cir. 2021) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)).

**DISCUSSION**

*Plaintiff's Arguments*

Plaintiff requests a sanction permitting him to introduce evidence of the spoliation and an adverse inference jury instruction. According to Plaintiff, such a sanction is warranted for several reasons. First, Plaintiff argues that the County and its agents consciously disregarded their duty to preserve the video evidence, given that despite their receipt of multiple evidence preservation letters from Plaintiff, they failed to preserve or offer any evidence of their efforts to preserve the video evidence. Second, Plaintiff asserts that the video evidence is highly relevant and the spoliation is substantially prejudicial to his claims because Decedent's interaction with Blakely on the night on the incident is probative as to whether Blakely conducted a reasonable examination of Decedent before her death. Finally, Plaintiff argues that an adverse inference jury instruction is fair and warranted because any lesser sanction would have no deterrent effect and would encourage spoliation of similar video evidence in the future. Plaintiff further asserts that attorney fees are warranted under Fed. R. Civ. Pro. Rule 37(e) because courts routinely award such fees to cover the time and effort necessary to successfully litigate the issue of spoliation.

*Defendants' Arguments*

Defendants argue that an adverse inference jury instruction is not warranted for several reasons. First, Defendants assert that the County's degree of fault is minimal because (1) there is no definitive evidence of bad faith, intentional misconduct, or that the video recordings ever existed, and (2) the video system was unreliable and operated by a third-party vendor and Kern County Sheriff's Office, who both are not subject to Plaintiff's *Monell* claim. Second, Defendants contend that Plaintiff's dismissal of some of his claims against the County, and his delay in filing his motion for spoliation sanctions, bely his claim that he suffered prejudice from the County's actions. Finally, Defendants argue that there is no showing that the video footage was critical or relevant to his case, and that other evidence exists that either duplicate or serve the same function as the video evidence. Furthermore, Defendants argue that any monetary sanction, if imposed, should be nominal in amount because there was no intentional effort by Defendants to deceive Plaintiff's counsel, and because any sanction greater than a monetary sanction would be unduly prejudicial to Defendants.

*Discussion*

Plaintiff does not seek sanctions in the form of preclusion of evidence or a default or dismissal of claims. Rather, Plaintiff requests (1) an adverse inference jury instruction and (2) attorney's fees and costs. Doc. No. 145 at 12, 14-15. The Court will address each request below in turn.

A. Adverse Inference Jury Instruction

A district court "has the broad discretionary power to permit a fact-finder to draw an adverse inference" from the destruction or spoliation of evidence against the party or witness responsible for that behavior. Earp v. Davis, 881 F.3d 1135, 1143 (9th Cir. 2018) (citing Glover, 6 F.3d at 1329); see also Caruso, 2021 U.S. Dist. LEXIS 150231, at *28. That is, a court may sanction the party responsible for the spoliation "by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party." Medical Lab. Mgmt. Consultants, 306 F.3d at 824. To determine whether an adverse inference spoliation instruction is warranted, the majority of courts use a three-part test consisting of the following

elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind;" and (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. See Compass Bank, 104 F. Supp. 3d at 1054; Apple Inc. v. Samsung Elecs. Co., Ltd., 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012); Montoya v. Orange Cty. Sheriff's Dep't, 987 F. Supp. 2d 981, 1010 (C.D. Cal. 2013); see also Meta Platforms, Inc. v. BrandTotal Ltd., 605 F. Supp. 3d 1218, 1236 (N.D. Cal. 2022).

When applied, adverse inference jury instructions range in their level of severity. See Chambers, 501 U.S. at 44-45 (finding the court's choice of sanction should be commensurate to the spoliator's conduct); see also Apple, 881 F. Supp. 2d at 1150 ("[C]ourts have formulated adverse inference instructions that range in their level of severity."); Compass Bank, 104 F. Supp. 3d at 1054. In its harshest form, "when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true." Apple, 881 F. Supp. 2d at 1150. At the next level, "when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption." Id. "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Leon, 464 F.3d at 959 (citing United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002)). At the other end of the spectrum, "the least harsh instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." Apple, 881 F. Supp. 2d at 1150. "If it makes this presumption, the spoliating party's rebuttal evidence must then be considered by the jury, which must then decide whether to draw an adverse inference against the spoliating party." Id.

Here, as an initial matter, the Court finds that an adverse inference jury instruction is warranted. The Court agrees with Judge Drozd's findings that Defendant County "had a duty to preserve any video footage that existed at the time plaintiff first sent preservation letters on July 22, 2016,"[4] and that the County "has not presented any evidence whatsoever suggesting that it

---

[4] The record indicates, and Defendants do not dispute, that the County first received an evidence preservation letter from Plaintiff on July 22, 2016. The record also indicates that the County received evidence preservation letters on July 26, 2016 and December 27, 2016.

6

complied with that duty" nor any "explanation as to why it did not attempt to preserve the surveillance video of decedent on the night in question." Doc. No. 111 at 3, 5. Aside from vague assertions that the video storage system suffered "critical failures" over the years, Defendants have not asserted that such failures affected the video recording of Decedent on the night of her fall. Additionally, Defendant's contention that it cannot provide such testimony because it no longer employs the individuals directly involved in the video preservation efforts is unavailing and does not reduce the culpability of the County's state of mind.

Moreover, contrary to the County's arguments, the video footage would have been relevant to Plaintiff's claims against the County. The video footage would have depicted Plaintiff's condition following her fall and the manner and duration of Plaintiff's interaction with Blakely. Such information is manifestly relevant in determining whether Decedent received appropriate treatment and was treated and housed appropriately. While some of the probative value of the video footage may be replaced through witness testimony and medical records, those other sources are not a complete and fair substitute, given that Decedent is unavailable to provide her own testimony regarding the events leading up to her death. The video footage would have provided a level of objective information that may not necessarily be accurately reflected by witness testimony or written documentation. Although the full extent of the video recordings' relevance "cannot be clearly ascertained because [they] no longer exist," Defendants "can hardly assert any presumption of irrelevance as to the destroyed [evidence]." Leon, 464 F.3d at 959. Accordingly, the Court agrees with the conclusion that "[a]n adverse jury instruction should be given" in this case. Doc. No. 111 at 5 (quoting Magdaluyo, 2016 WL 614397, at *5); see also Apple, 881 F. Supp. 2d at 1149-50 (finding that an adverse inference instruction was warranted because defendant consciously disregarded its obligation to preserve relevant evidence despite having ample notice that the evidence was potentially relevant to litigation).

The Court further finds regarding the severity of the adverse inference instruction that a permissive adverse inference instruction is warranted. There is no evidence—and Plaintiff does not allege—that the County acted in bad faith. However, the record indicates that the County understood it had a duty to preserve existing evidence when it received Plaintiff's preservation

letter on three separate occasions, and that the County took no steps within the applicable thirteen-month retention period to check for and preserve the video footage nor note that a technical failure in the video recording system affected the video footage. Furthermore, as discussed above, the loss of the video footage prejudices Plaintiff's ability to fully understand and prove the scope and nature of Decedent's condition/symptoms and Defendants' conduct.

The Court acknowledges that an adverse inference instruction against the County may be prejudicial to Blakely. However, several courts in the Ninth Circuit have allowed adverse inference instructions in similar (but not identical) circumstances, even though they were potentially prejudicial to other defendants who did not participate in the spoliation. See Pettit v. Smith, 45 F. Supp. 3d 1099, 1110-11 (D. Ariz. 2014); see also Woods v. Scissons, 2019 U.S. Dist. LEXIS 137305, *16-17 (D. Ariz. Aug. 14, 2019); Mizzoni v. Nevada, 2017 U.S. Dist. LEXIS 158445, *18-19 (D. Nev. Sep. 27, 2017); Ramos v. Swatzell, 2017 U.S. Dist. LEXIS 103014, *20-21 (C.D. Cal. June 5, 2017). For example, in *Pettit*, the court found that a permissive adverse inference instruction was appropriate after prison video footage of the individual defendants' challenged conduct was destroyed by their employer. Pettit, 45 F. Supp. 3d at 1110-11. The court reasoned that the instruction was needed to ensure that fairness to the plaintiff was done at trial. Id. The Court also noted that the employer was not disinterested in the claims and evidence raised against the individual defendants because the employer was ultimately responsible for their training and conduct and had complete control over the video evidence. Id. at 1106. Although the individual defendants were not involved in the spoliation, the court suggested that any prejudice to them could be mitigated by the employer indemnifying them for the damages they were legally responsible for within the course and scope of employment. Id. Accordingly, the court concluded that the employer's spoliation of evidence should be explained to the jury, that the jury should be allowed to infer that the lost evidence would have favored the plaintiff's position, and that no suggestion to the jury would be made that the individual defendants were in any way responsible for the loss of evidence. Id. at 1110-11.

Here, the Court will instruct the jury of the County's spoliation of evidence and permit them to infer that the lost evidence would have been favorable to Plaintiff and unfavorable to the

County.  Id. at 1110-11; see also Estate of Bosco v. Cty. of Sonoma, 2022 U.S. Dist. LEXIS 206409, *33 (N.D. Cal. Nov. 14, 2022) (imposing permissive adverse inference instruction against defendants, including the county and prison's medical group and nurses, after finding that prison officials spoliated video evidence).  The Court will not impose the harsher form of instruction—a mandatory adverse inference instruction—against the County nor suggest to the jury that Blakely was in any way responsible for the spoliated evidence.  Any potential prejudice to Blakely can be mitigated by Defendants submitting sufficient rebuttal evidence to persuade the jury not to draw the adverse inference altogether, and by crafting the language of the permissive adverse inference instruction.[5]  Any sanction less than a permissive adverse inference instruction would be unfair to Plaintiff and may incentivize the County to spoliate future evidence if no adverse inference instruction is imposed in this case.  Accordingly, the Court will grant Plaintiff's request for a permissive adverse inference instruction against Defendant County.

　　B.　Attorney Fees

Under Rule 37(e)(1), "upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).  "An award of attorneys' fees for bringing a sanctions motion is an appropriate remedy for spoliation under Rule 37(e)(1) as 'measures no greater than necessary to cure the prejudice,' even where a party fails to show bad faith under Rule 37(e)(2)." Meta Platforms, 605 F. Supp. 3d at 1241; see also RG Abrams Ins. v. Law Offices of C.R. Abrams, 2022 U.S. Dist. LEXIS 140943, *138-*139 (C.D. Cal. July 1, 2022), recommendation adopted, 2022 U.S. Dist. LEXIS 200121 (C.D. Cal. Nov. 2, 2022).

Here, the Court finds that an award of attorneys' fees is appropriate to help cure the prejudice to Plaintiff that resulted from the County's spoliation.  See Meta Platforms, 605 F. Supp. 3d at 1241; Colonies Partners L.P. v. Cty. of San Bernardino, 2020 U.S. Dist. LEXIS 56922, *33-

---

[5] The parties will be ordered to meet and confer regarding the precise language for the permissive adverse inference instruction that is consistent with the analysis and concerns expressed in this order.  The parties will be expected to submit either a joint instruction or separate instructions in connection with the submission of proposed jury instructions after the pretrial conference and issuance of the Court's pretrial order.  If the parties submit separate proposed instructions for the permissive adverse inference instruction, then the parties will be required to explain in writing the efforts they took to meet and confer to craft the language for the permissive adverse inference instruction.

34 (C.D. Cal. Feb. 27, 2020), <u>recommendation adopted</u>, 2020 U.S. Dist. LEXIS 54026 (C.D. Cal. Mar. 27, 2020). Because Plaintiff has not specified a dollar amount for the award, additional briefing by the parties is necessary. The Court will set the briefing schedule in the Order section below.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for spoliation sanctions (Doc. Nos. 86, 145) is GRANTED in part as follows:

    a. The Court will grant a permissive adverse inference instruction against the County as discussed above. The parties are ordered to meet and confer to craft the precise language for the permissive adverse inference instruction that is consistent with the analysis and concerns expressed in this order. The parties shall submit either a joint instruction or separate instructions in connection with their submission of proposed jury instructions after the pretrial conference and issuance of the Court's pretrial order. If the parties submit separate proposed instructions for the permissive adverse inference instruction, then the parties shall explain in their separate submissions the efforts they took to meet and confer to craft the language for the permissive adverse inference instruction.

    b. Plaintiff will be awarded reasonable attorneys' fees associated with bringing his motion. Plaintiff must submit a declaration and records to the Court in support of the above attorneys' fees award within fourteen (14) days of the date of this Order. Defendants shall file their Response within fourteen (14) days of the filing of Plaintiff's submission. Plaintiff shall file a Reply within seven (7) days of Defendants' Response.

    c. Once all briefing is received, the Court will issue further orders (including setting a hearing date if the Court determines that a hearing is necessary) to resolve the above attorneys' fees and jury instructions issues.

IT IS SO ORDERED.

Dated:   March 2, 2023                                    _____
                                                          SENIOR DISTRICT JUDGE